No. 23-7008

# UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

DONALD RAY LOGSDON, JR.,

*Plaintiff-Appellant,*

*-v-*

UNITED STATES MARSHAL SERVICE, *et al.,*

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA
CASE NO. 6:21-CV-00253-KHV-TJJ, HONORABLE KATHRYN H. VRATIL

## PLAINTIFF-APPELLANT'S OPENING BRIEF

JANAI S. NELSON
    *President & Director-Counsel*
SAMUEL SPITAL
KEVIN E. JASON
ASHOK CHANDRAN
NAACP LEGAL DEFENSE &
    EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200
kjason@naacpldf.org

CHRISTOPHER KEMMITT
NAACP LEGAL DEFENSE &
    EDUCATIONAL FUND, INC.
700 14th Street NW, Suite 600
Washington, DC 20005
(202) 682-1300

WIL M. CRAWFORD
INDIAN & ENVIRONMENTAL
    LAW GROUP, PLLC
117 South Ash Street
Ada, OK 74820
(580) 453-7051

May 5, 2023

**Oral argument is requested**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. iii

STATEMENT OF RELATED CASES ................................................................................ vii

GLOSSARY ......................................................................................................................... viii

INTRODUCTION ................................................................................................................. 1

STATEMENT OF JURISDICTION .................................................................................... 2

STATEMENT OF THE ISSUES ......................................................................................... 3

STATEMENT OF THE CASE ............................................................................................. 3

I.   FACTUAL BACKGROUND .......................................................................................... 3

II.  PROCEDURAL HISTORY ............................................................................................ 4

    A.  Defendants' First Motion to Dismiss ..................................................................... 5

    B.  Defendants' Motion for Reconsideration .............................................................. 7

SUMMARY OF ARGUMENT .......................................................................................... 10

STANDARD OF REVIEW ................................................................................................. 13

ARGUMENT ........................................................................................................................ 14

I.   THE DISTRICT COURT ABUSED ITS DISCRETION WHEN IT
    GRANTED DEFENDANTS' MOTION TO RECONSIDER ........................... 14

    A.  The District Court Erroneously Granted a Motion to Reconsider That Did
        Not Satisfy This Court's Basic Requirements ...................................................... 16

    B.  The District Court Erred by Granting a Motion That Merely Recycled
        Rejected Arguments and Presented Arguments That Were Previously
        Available ...................................................................................................................... 18

II.  THE DISTRICT COURT ERRED IN DETERMINING THAT LOGSDON
    CANNOT MAINTAIN A CLAIM UNDER *BIVENS*. ........................................ 20

A.   Notwithstanding Recent Limits on *Bivens* in New Contexts, the Supreme Court Has Made Clear That *Bivens* Retains Its Vitality in the Context of Heartland Search-and-Seizure Cases Like Logsdon's. ........................................ 20

B.   The Deputy Marshals' Use of Excessive Force Against Logsdon Is Squarely Covered by *Bivens* and Does Not Present a New Context. ................................ 25

C.   Even If Logsdon's Claim Presents a New Context, No "Special Factors" Warrant Foreclosing a Remedy. ............................................................ 38

CONCLUSION ................................................................................................ 48

ORAL ARGUMENT STATEMENT ................................................................ 49

CERTIFICATE OF COMPLIANCE ................................................................ 50

CERTIFICATE OF DIGITAL SUBMISSION ................................................ 51

CERTIFICATE OF SERVICE ........................................................................ 52

Attachment A: District Court Order on Motion to Dismiss Filed 10/21/2022 .......... 53

Attachment B: District Court Order on Motion for Reconsideration of Order Filed 01/13/2023 ................................................................................................ 65

Attachment C: District Court Judgment Filed 01/13/2023 ........................................ 76

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Contreras ex rel. A.L. v. Dona Ana Cnty. Bd. of Cnty. Comm'rs,*
965 F.3d 1114 (10th Cir. 2020) ................................................................. 24

*Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty.,*
771 F.3d 697 (10th Cir. 2014) .................................................................. 14

*Alvarado-Escobedo v. United States,*
817 F. App'x 536 (10th Cir. 2020) ....................................................... 31, 35

*Big Cats of Serenity Springs, Inc. v. Rhodes,*
843 F.3d 853 (10th Cir. 2016) ............................................. 16, 34, 40, 41

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,*
403 U.S. 388 (1971) ............................... 1, 11–12, 20–21, 26, 34, 36

*Bush v. Lucas,*
462 U.S. 367 (1983) ............................................................................ 28, 42

*Carlson v. Green,*
446 U.S. 14 (1980) ....................................................... 7, 21, 27, 41, 47

*ClearOne Commnc'ns v. Biamp Sys.,*
653 F.3d 1163 (10th Cir. 2011) ............................................................... 13

*Corr. Servs. Corp. v. Malesko,*
534 U.S. 61 (2001) .............................................................................. 28, 30

*Davis v. Clifford,*
825 F.3d 1131 (10th Cir. 2016) ............................................................... 34

*Davis v. Passman,*
442 U.S. 228 (1979) ................................................................................ 21

*Egbert v. Boule,*
142 S. Ct. 1793 (2022) ....................... 17, 21, 23, 26, 29, 39, 41, 43, 45, 48

*Egbert v. Boule,*
142 S. Ct. 457 (2021) (mem.) ................................................................. 24

*Elm Ridge Expl. Co. v. Engle*,
   721 F.3d 1199 (10th Cir. 2013) ...................................................................... 13

*Engle v. Mecke*,
   24 F.3d 133 (10th Cir. 1994) ........................................................................ 32

*Est. of Redd by & through Redd v. Love*,
   848 F.3d 899 (10th Cir. 2017) ...................................................................... 32

*Exxon Shipping Co. v. Baker*,
   554 U.S. 471 (2008) ...................................................................................... 15

*FDIC v. Meyer*,
   510 U.S. 474 (1994) ...................................................................................... 30

*Fed. Deposit Ins. Corp. v. Daily*,
   973 F.2d 1525 (10th Cir. 1992) .................................................................... 18

*Graham v. Connor*,
   490 U.S. 386 (1985) ................................................................................ 26, 36

*Greenpoint Tactical Income Fund LLC v. Pettigrew*,
   38 F.4th 555 (7th Cir. 2022) ........................................................................ 24

*Harris v. Roderick*,
   126 F.3d 1189 (9th Cir. 1997) ...................................................................... 32

*Hernandez v. Mesa*,
   140 S. Ct. 735 (2020) ............................................*26,* 29–31, 36, 43, 48

*Herrera v. City of Albuquerque*,
   589 F.3d 1064 (10th Cir. 2009) .................................................................... 13

*Hicks v. Ferreyra*,
   64 F.4th 156 (4th Cir. 2023) ................................................................... 24, 48

*Hoffman v. Pryer Aerospace, LLC*,
   No. 20-CV-0224-CVE-CDL, 2021 WL 328255 (N.D. Okla. Feb. 1,
   2021) .............................................................................................................. 15

*Hudson v. Michigan*,
   547 U.S. 586 (2006) ...................................................................................... 28

*Johnson v. Johnson,*
466 F.3d 1213 (10th Cir. 2006) ...................................................................... 14

*Lanuza v. Love,*
899 F.3d 1019 (9th Cir. 2018) ........................................................................ 39

*Marquez v. City of Albuquerque,*
399 F.3d 1216 (10th Cir. 2005) ...................................................................... 46

*Mejia v. Miller,*
53 F.4th 501 (9th Cir. 2022) ........................................................ 9, 11, 17, 32–33

*Mejia v. Miller,*
61 F.4th 663 (9th Cir. 2023) ..................................................................26, 32–33

*Mick v. Brewer,*
76 F.3d 1127 (10th Cir. 1996) .................................................................. 32, 37

*Rogers v. Colo. Dep't of Corr.,*
No. 16-CV-02733-STV, 2019 WL 5265257 (D. Colo. Oct. 17, 2019).................... 15

*Salmon v. Schwarz,*
948 F.2d 1131 (10th Cir. 1991) ...................................................................... 35

*Serrano v. United States,*
766 F. App'x 561 (10th Cir. 2019) ..................................................... 31, 35, 37, 42, 47

*Servants of the Paraclete v. Does,*
204 F.3d 1005 (10th Cir. 2000) ..................................................................11, 14, 15

*Silva v. United States,*
45 F.4th 1134 (10th Cir. 2022) .................................................7–8, 17, 19, 23, 41, 43

*Simmons v. Himmelreich,*
578 U.S. 621 (2016) ...................................................................................... 42

*Smith v. Arguello,*
415 F. App'x 57 (10th Cir. 2011) ............................................................. 31, 47

*Solomon v. Petray,*
795 F.3d 777 (8th Cir. 2015) .......................................................................... 32

*Tanzin v. Tanvir,*
141 S. Ct. 486 (2020) .................................................................................... 42

*Thomas v. Durastanti*,
607 F.3d 655 (10th Cir. 2010) ................................................................. 32, 37

*Trapp v. U.S. Marshals Serv.*,
139 F. App'x 12 (10th Cir. 2005). .......................................................... 32, 47

*United States v. Goines*,
No. 20-3183, 2021 WL 4544098 (10th Cir. Oct. 5, 2021) ......................................... 24

*United States v. Hendrix*,
673 F. App'x 850 (10th Cir. 2016) ............................................................... 17

*United States v. Huff*,
782 F.3d 1221 (10th Cir. 2015) ................................................................. 18

*Wasatch Equal. v. Alta Ski Lifts Co.*,
820 F.3d 381 (10th Cir. 2016) ................................................................. 13

*Wellington v. Daza*,
No. 21-2052, 2022 WL 3041100 (10th Cir. Aug. 2, 2022)................................... 32, 35

*Wilkie v. Robbins*,
551 U.S. 537 (2007) ......................................................................... 42

*Williams v. Keller*,
No. 21-4022, 2021 WL 4486392 (10th Cir. Oct. 1, 2021) ......................................... 48

*Wilson v. Layne*,
526 U.S. 603 (1999) .................................................................... 31, 35, 47

*Young v. City of Council Bluffs*,
569 F. Supp. 3d 885 (S.D. Iowa 2021) ........................................................... 37

*Ziglar v. Abbasi*,
582 U.S. 120 (2017) ............................ 5, 11, 12, 22, 25, 27–30, 34, 36, 38–39, 47–48

**Statutes**

5 U.S.C. app. 3 § 2 ......................................................................... 47

5 U.S.C. app. 3 § 4 ......................................................................... 46

28 U.S.C. § 1291 ............................................................................. 3

28 U.S.C. § 1331 ................................................................................................. 2

28 U.S.C. § 2680(h) ............................................................................................ 27

31 U.S.C. § 3724 .......................................................................................... 19, 44

**Other Authorities**

8 C.F.R. § 287.8(a)(1)(iii) .................................................................................. 46

8 C.F.R. § 287.10(c) ........................................................................................... 44

28 C.F.R. § 0.111 ............................................................................................... 44

28 C.F.R. § 542.11(a) ......................................................................................... 43

28 C.F.R. § 542.18 ............................................................................................. 44

28 C.F.R. § 542.19 ............................................................................................. 44

28 CFR § 0.29c ............................................................................................. 45, 46

D. Kan. Rule 7.3 ................................................................................................ 15

*Error*, Black's Law Dictionary (11th ed. 2019) ................................................ 17

Fed. R. Civ. P. 54(b) .......................................................................................... 37

Fed. R. Civ. P. 59 ............................................................................................... 16

Fed. R. Civ. P. 60 ............................................................................................... 16

## STATEMENT OF RELATED CASES

There has been one prior appeal in this matter: *Logsdon v. United States Marshal Service, et al.,* 21-7070. There are no related appeals.

## GLOSSARY

- Bureau of Prisons (BOP)
- Bureau of Land Management (BLM)
- Federal Tort Claims Act (FTCA)
- Office of the Inspector General (OIG)
- United States Marshals Service (USMS)

# INTRODUCTION

Donald Ray Logsdon, Jr., was ambushed by Deputy United States Marshals Phillip Brian Gilliam, Jere Smith, and Cody Vaughn ("Defendants" or "the Deputy Marshals"), who knocked him unconscious and then continued to beat him for over two minutes, in an assault captured on video and witnessed by numerous bystanders. Proceeding pro se, Logsdon filed suit to vindicate his Fourth Amendment right to be free from excessive force. The Deputy Marshals moved to dismiss the action and argued that no claim existed under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Recognizing that controlling precedent supports the availability of a *Bivens* remedy in cases like this, a standard Fourth Amendment excessive force case like *Bivens* itself, the district court denied the motion to dismiss. Following that ruling, the case should have proceeded to discovery, and the Deputy Marshals should have been held to account for their actions. Instead, the district court improperly threw out Logsdon's case and granted a defective motion to reconsider.

In doing so, the district court committed several errors that warrant reversal by this Court. First, the district court abused its discretion by granting a motion to reconsider that met none of the well-settled requirements for reconsidering a prior order. The district court's order on the motion to reconsider improperly relied on a nonbinding, inapposite case to justify its abrupt about-face.

In granting reconsideration, the district court also erred in its substantive analysis of Logsdon's claim. This is a prototypical search-and-seizure case of the type that *Bivens*

1

has governed for decades. Yet, the district court wrongly determined that minor factual differences created a new context and that *Bivens* did not apply. This is contrary to Supreme Court precedent, contrary to this Court's precedent, and contrary to the conclusion the district court reached weeks prior. The Supreme Court has made clear through its recent decisions that *Bivens* remains a tool for deterring individual line officers in standard Fourth Amendment cases like this one, i.e., the cases arising in the same context that *Bivens* itself did. Moreover, even if this case did not fit within an existing *Bivens* context (and it does), there were no "special factors" weighing against an extension of *Bivens*, especially since there is no adequate alternative remedy available to Logsdon.

This Court should reverse the district court's reconsideration ruling and remand so that Logsdon may have an opportunity to vindicate his fundamental Fourth Amendment rights.

## STATEMENT OF JURISDICTION

Plaintiff-Appellant appeals from an order of dismissal with prejudice entered January 13, 2023, by the U.S. District Court for the Eastern District of Oklahoma. App. at 145.[1] The district court had subject-matter jurisdiction over his claims under 28 U.S.C. § 1331. In accordance with Federal Rule of Appellate Procedure 4(a), a timely

---

[1] Appellant's Appendix is cited as "App. at ___."

notice of appeal was filed on February 13, 2022. App. at 156. This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. Whether the district court erred in granting Defendants' Motion for Reconsideration of Order where there was no intervening change in controlling law, no newly available evidence, and no need to correct clear error or prevent manifest injustice as is required in this Circuit.

2. Whether the district court erred in concluding that Logsdon's Fourth Amendment excessive force claim against rank-and-file deputy marshals presented a new context under *Bivens* such that providing damages relief would amount to creating a new judicial remedy.

3. Whether the district court erred in concluding that special factors counsel against recognizing a *Bivens* cause of action for Logsdon's Fourth Amendment claim even though Logsdon has no adequate alternative remedies available to him.

## STATEMENT OF THE CASE

### I.    FACTUAL BACKGROUND

On March 5, 2020, Donald Ray Logsdon, Jr., was working on a generator outside his friend's home. App. at 21. While he worked, Deputy United States Marshals Phillip Brian Gilliam, Jere Smith, and Cody Vaughn approached him to execute a warrant for his arrest. *Id.* Rather than announce their presence, the Deputy Marshals "walked up and were hiding in the dark." *Id.* Without warning and without any attempt to peacefully

3

arrest Logsdon, Deputy Marshal Gilliam "ran up behind [Logsdon] and kicked [him] in the face." *Id.* That blow was delivered with such force that Logsdon "was knocked out from this point for[]ward." *Id.*

The rest of the interaction was documented on video and observed by numerous witnesses, including the woman who had informed the United States Marshals Service ("USMS") of Logsdon's whereabouts and the woman's fourteen-year-old daughter. App. at 21–22. "[A]fter the first one [Deputy Marshal Gilliam] kicked [Logsdon] in the face and knocked [him] out, all of them took turns foot stomping [him] for (2) two minutes." App. at 21. Because Logsdon was unconscious while the Deputy Marshals "foot stomp[ed]" him, he "never tried to resist." *Id.* In fact, he "never had a chance to." *Id.*

According to the eyewitness account, the Deputy Marshals "went way too far" by being so violent. App. at 22. And when Logsdon was booked into the Pittsburg County Jail, the chief of security took photos of his face, showing the injuries Logsdon sustained. *Id.*

## II.    PROCEDURAL HISTORY

Proceeding pro se, Logsdon initiated suit on August 25, 2021, by filing a verified complaint that named Deputy Marshals Gilliam, Smith, and Vaughn, as well as the USMS, as defendants. *See* App. at 17. He sought a court-appointed attorney to help litigate his claims. App. at 25. In denying his request, the magistrate judge noted that his case did not involve "complicated legal or factual issues," and that Logsdon "ha[d]

4

shown himself to be capable of articulating his claims and understanding the rules and procedure" of federal court. App. at 30. The magistrate judge went on to construe his complaint as raising a Fourth Amendment excessive force claim via a *Bivens* action. App. at 31. The district court then dismissed the USMS as a defendant on March 7, 2022, finding that federal agencies are not proper defendants in a *Bivens* action. App. at 33.

### A. Defendants' First Motion to Dismiss

The Deputy Marshals moved to dismiss Logsdon's claims on July 5, 2022. App. at 35. They argued primarily that Logsdon's case could not satisfy the two-step framework created by the Supreme Court in *Ziglar v. Abbasi*, 582 U.S. 120 (2017), for authorizing constitutional causes of action against federal officials. Specifically, *Abbasi* first calls for examining whether a claim arises in a "new context," *id.* at 139, and, if so, examining whether there are "special factors" that counsel hesitation about extending *Bivens* to this new setting, *id.* at 136. Notwithstanding the direct parallels between this excessive force case and the cause of action authorized in *Bivens* itself, Defendants argued this case presented a new context because: (1) the excessive force claim arose from an arrest pursuant to a warrant, while the excessive force claim in *Bivens* arose out of a warrantless arrest; and (2) the excessive force did not occur on Logsdon's own property. App. at 40–41. Defendants did not explain how either purported distinction implicated the Fourth Amendment right to be free from excessive force at issue in both this case and *Bivens*.

They then argued that two special factors counseled against recognizing what they characterized as a "new" *Bivens* cause of action here: (1) the need for deputy marshals to operate largely without court oversight; and (2) the purported adequacy of alternative remedies, namely administrative grievance processes and Congress's appropriations power over the USMS. App. at 42–45.

Defendants also argued that they were entitled to qualified immunity on Logsdon's claims. Deputy Marshal Gilliam contended that he was entitled to kick Logsdon in the face and knock him out without warning because of case law establishing that *some* degree of force may be used when an individual "resists arrest or fails to follow police orders," App. at 48, neither of which Logsdon did here.

The district court denied Defendants' motion on October 21, 2022. App. at 102. In doing so, the district court first determined that "Plaintiff's complaint asserts facts that are not meaningfully different than the circumstances in *Bivens*." App. at 106. The district court determined that Logsdon's claim was precisely what *Bivens* contemplated: an excessive force claim against a domestic law enforcement officer making an arrest. *Id.* The district court emphasized that Logsdon's claim did not present any of the national security considerations that underlay the Supreme Court's recent case law limiting the availability of *Bivens* in new contexts. App. at 106–07. Since Logsdon's claim centered on how much force the Deputy Marshals "can use to arrest an individual," the district court reasoned it is a claim where "[t]he Supreme Court and the Tenth Circuit have provided extensive judicial guidance . . . ." App. at 106 (citing *Graham v. Connor*,

490 U.S. 386, 395 (1985); *McCoy v. Meyers*, 887 F.3d 1034, 1045–47 (10th Cir. 2018)).

And finally, the district court noted that numerous courts—including this Court in an

unpublished opinion—have permitted *Bivens* claims to proceed against agents of the

USMS. App. at 107 n.2 & 108. Because Logsdon's claim did not present a new context,

the district court did not need to analyze any special factors. App. at 108.

The district court also held that Defendants were not entitled to qualified immunity,

finding that longstanding precedent clearly established the unconstitutionality of

striking an already-subdued arrestee. App. at 111–12.

### B. Defendants' Motion for Reconsideration

Defendants moved for reconsideration under Federal Rule of Civil Procedure 59(e)

on November 17, 2022. App. at 113. They faulted the district court for not applying

this Court's decision in *Silva v. United States*, even though *Silva* did not involve a Fourth

Amendment claim and had minimal analysis on the "new context" inquiry. 45 F.4th

1134 (2022). In *Silva*, the plaintiff alleged that a corrections officer assaulted him in a

federal facility and violated his Eighth Amendment rights. *Id.* at 1136. The decision

noted that an allegation of excessive force under the Eighth Amendment differed

meaningfully from an allegation of deliberate indifference to medical needs, which the

Supreme Court had previously recognized as a valid *Bivens* claim in *Carlson v. Green*, 446

U.S. 14 (1980). *Id.* at 1137. From there, a panel of this Court concluded that the Bureau

of Prisons Administrative Remedy Program qualified as an adequate alternative remedy

7

and therefore served as a special factor precluding *Bivens* expansion to this context. *Id.* at 1141.

Defendants "acknowledged that they did not notify [the district court] of the Tenth Circuit's decision in *Silva*," which had been decided while they were briefing their first motion to dismiss. App. at 115 n.1. Though *Silva* was previously available and related to a different constitutional claim, Defendants nonetheless asserted that *Silva* required the district court to vacate its first order. *Id.* Defendants then reiterated their argument that Logsdon's claim presented a new context because the arrest took place outside of Logsdon's friend's house and pursuant to a warrant—the very arguments the district court previously rejected. App. at 116–18.

Defendants also asserted a new argument that Logsdon's claim presented a new context because it involved a new category of defendants, though they did not address the district court's citations to numerous other courts—including this Court—that have permitted *Bivens* claims against the USMS to proceed. App. at 116–17. Nor did they explain why there was any meaningful distinction between deputy marshals and Federal Bureau of Narcotics officers, the defendants in *Bivens*, for purposes of the Fourth Amendment right to be free from excessive force.

Defendants then raised the same arguments about special factors, focusing primarily on their assertions about the availability of alternative statutory and administrative mechanisms. App. at 120–24. This time, they claimed that the Federal Tort Claims Act (FTCA) is an available remedy in addition to Congress's appropriations

power and various administrative remedies. App. at 123. Defendants also argued, again for the first time, that Congress's history of legislation expanding the USMS and its oversight of the agency was proof that Congress did not intend for a *Bivens* remedy to exist against the agency. App. at 124–25.

In opposition, Logsdon argued that, under Tenth Circuit precedent, "[a] motion to reconsider is not a second opportunity for the losing party to make its strongest case, to rehash arguments or to dress up arguments that previously failed," App. at 140. He added that Defendants' motion was inappropriate because it did not introduce an intervening change in controlling law, new evidence, or a need to correct clear error or prevent manifest injustice against Defendants. App. at 138. He also argued that Defendants had "abandoned" *Silva* by failing to raise it earlier. App. at 137.

The district court granted reconsideration anyway. App. at 145. Even though Defendants eventually cabined their motion as one seeking relief from "clear error," or "misapprehen[sion]" of "controlling law," App. at 142, the district court relied on *Mejia v. Miller*, 53 F.4th 501 (9th Cir. 2022), a newly issued Ninth Circuit decision. The district court highlighted that *Mejia* had been released "[s]hortly after the [district court] ruled on [D]efendants' motion to dismiss," App. at 150, despite the fact that *Mejia* was only referenced in passing in Defendants' motion and was an out-of-circuit decision that was not a change in controlling authority. Based on its interpretation of *Mejia*, the district court reversed course, accepting Defendants' arguments that Logsdon's claim presented a new context because it took place outside of a friend's home, involved an

9

arrest pursuant to a warrant, and involved a different category of defendants. App. at 151. Other than this out-of-circuit authority, the district court provided no explanation for reaching a conclusion directly opposite to the one it had reached before, and it provided no justification for declining to apply the Supreme Court and Tenth Circuit authority that it had cited in its order on the first motion. The district court similarly did not acknowledge its prior opinion's discussion of cases permitting *Bivens* actions to proceed against Deputy United States Marshals.

The district court then determined that two special factors counseled against extending *Bivens* to this purportedly new context. First, it held without explanation that "courts are 'not undoubtedly better positioned than Congress to create a damages action' for claims against a new category of defendants such as [deputy marshals]." App. at 152 (quoting *Egbert v. Boule*, 142 S. Ct. 1793, 1803 (2022)). Second, the district court determined that the statutory and administrative alternatives available to Logsdon were adequate. App. At 152–54. Based on these determinations, the district court dismissed Logsdon's complaint in its entirety on January 13, 2023. App. At 154.

Logsdon timely appealed that decision by filing a notice of appeal on February 10, 2023. App. At 156.

## SUMMARY OF ARGUMENT

Logsdon has been wrongly denied his right to assert a cause of action against the Deputy Marshals after they violated his Fourth Amendment right to be free from excessive force.

1. The district court abused its discretion when it reversed its prior decision denying a motion to dismiss and granted a motion to reconsider that did not adhere to this Court's requirements. This Court has consistently held that a motion to reconsider should only be granted if a party identifies: (1) an intervening change in controlling law; (2) new evidence that was previously unavailable; or (3) the need to correct clear error or prevent manifest injustice. *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

In granting this motion, the district court relied on *Mejia v. Miller*, 53 F.4th 501 (9th Cir. 2022), a Ninth Circuit case decided after the initial order denying the motion to dismiss. Though parties are prohibited from filing a motion to reconsider that merely repackages arguments already rejected or pushes new arguments based on case law that could not reflect a change in controlling authority because it pre-dated the court's initial decision, *see Servants of the Paraclete*, 204 F.3d at 1012, that is exactly what happened here. As the *Mejia* decision had no binding effect on the district court, and since there was no alternative justification for reconsideration of a prior order, the district court abused its discretion when it granted this motion. This Court should reverse this decision and remand with instructions to reinstate Logsdon's claim.

2. The district court erred in finding that Logsdon's Fourth Amendment claim required an extension of *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) to a new context. A case arises in a "new *Bivens* context" only where it "is different in a meaningful way from previous *Bivens* cases." *Ziglar v. Abbasi*, 582 U.S.

11

120, 139 (2017). In *Bivens*, the Supreme Court created an implied cause of action where a man sought to sue agents from the Federal Bureau of Narcotics after they searched his home without a warrant and subjected him to "unreasonable force." 403 U.S. at 389. Since then, and as recently as 2017, the Supreme Court recognized *Bivens* as necessary to deter unconstitutional acts by federal officers in heartland search-and-seizure cases like this one. *See Abbasi*, 582 U.S. at 134.

Despite the Supreme Court's guidance on *Bivens* claims in the Fourth Amendment sphere, the district court determined that three trivial details of Logsdon's arrest were meaningful enough to foreclose a typical application of *Bivens*. These facts were: (1) Logsdon's arrest by individuals from the USMS versus the Bureau of Federal Narcotics in *Bivens*; (2) the Deputy Marshals' possession of a warrant; and (3) the fact that the use of excessive force occurred away from Logsdon's home. None of these facts bear materially on an excessive force claim. Nor does case law of this Court or the Supreme Court support treating these differences as meaningful differences from *Bivens* itself. To the contrary, there are several cases supporting the notion that *Bivens* covers excessive force claims when they do not implicate any special considerations, such as border or national security. *See infra* Section II(B).

3. Even if Logsdon's case presented a new *Bivens* context, and it does not, the district court would have erred in finding that two special factors counseled against extending the remedy here. First, contrary to the district court's determination, neither the FTCA nor the Department of Justice's ability to investigate itself are adequate

alternatives that deter individual officers. As the Supreme Court has held, and reaffirmed, the FTCA does not displace *Bivens* specifically because *Bivens* provides greater deterrent value. Further, the administrative regulations cited by the district court do not have the reach described by the district court. They simply empower the Department of Justice to investigate itself; they create no obligation that it do so, nor do they provide any specific procedure for such investigations. This separates them from the detailed, mandatory schemes that have been found to be sufficient by the Supreme Court and this Court.

## STANDARD OF REVIEW

This Court reviews a ruling on a motion for reconsideration under the abuse of discretion standard. *Elm Ridge Expl. Co. v. Engle*, 721 F.3d 1199, 1216 (10th Cir. 2013). A district court "abuses its discretion if it made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *ClearOne Commnc'ns v. Biamp Sys.*, 653 F.3d 1163, 1178 (10th Cir. 2011) (cleaned up).

This Court reviews a district court's grant of a motion to dismiss de novo. *Wasatch Equal. v. Alta Ski Lifts Co.*, 820 F.3d 381, 386 (10th Cir. 2016).[2] The Court must "accept all the well-pleaded allegations of the complaint as true" and "construe them in

---

[2] That this appeal presents an issue typically reviewed de novo through the grant of a motion to reconsider does not change the legal standard for the underlying issue. *See, e.g., Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (reviewing the grant of qualified immunity against an officer de novo in an appeal from a lower court's grant of an officer's motion for reconsideration following the grant of plaintiff's summary judgment motion).

the light most favorable to the plaintiff." *Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty.*, 771 F.3d 697, 700 (10th Cir. 2014). Because Logsdon proceeded pro se before the district court, this Court must "review his pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys." *Johnson v. Johnson*, 466 F.3d 1213, 1214 (10th Cir. 2006).

## ARGUMENT

The district court committed several errors when it granted Defendants' baseless motion for reconsideration and dismissed Logsdon's case. First, the district court abused its discretion when it granted a motion to reconsider that met none of the necessary requirements. Second, the district court erred in its substantive analysis of Logsdon's *Bivens* claim by (1) treating trivial details surrounding his arrest as material differences that prohibited a straightforward application of *Bivens* and (2) concluding that the Federal Torts Claims Act and the Department of Justice's administrative grievance process were adequate alternative remedies.

## I.  THE DISTRICT COURT ABUSED ITS DISCRETION WHEN IT GRANTED DEFENDANTS' MOTION TO RECONSIDER

The district court abused its discretion when it granted the Deputy Marshals' motion for reconsideration. In ruling on the motion to reconsider, the district court cited *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000), this Court's standard for motions to reconsider under Fed. R. Civ. P. 59(e). App. at 145. Specifically, in *Servants of the Paraclete*, this Court held that a motion to reconsider shall not be granted

14

unless a party identifies: (1) an intervening change in controlling law; (2) new evidence previously unavailable; or (3) the need to correct clear error or prevent manifest injustice. 204 F.3d at 1012. This Court also emphasized that a motion to reconsider "*is not* appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Id.* (emphasis added); *see also Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008).

Though Rule 59(e), by its terms, applies to reconsideration of a final judgment, the district court's approach was consistent with the circuit practice of using an identical standard for all motions to reconsider, even if they are pertaining to orders preceding final judgment. *See, e.g.*, D. Kan. Rule 7.3 (listing the same three requirements as *Servants of the Paraclete v. Does* for motions to reconsider before judgment); *Hoffman v. Pryer Aerospace, LLC*, No. 20-CV-0224-CVE-CDL, 2021 WL 328255, at *1 (N.D. Okla. Feb. 1, 2021) (same); *Rogers v. Colo. Dep't of Corr.*, No. 16-CV-02733-STV, 2019 WL 5265257, at *2 (D. Colo. Oct. 17, 2019) (same). Of note, while the district court cited *Servants of the Paraclete*, a case interpreting Rule 59(e), the Deputy Marshals sought to file their motion to reconsider under Rule 59(e) itself. However, neither Defendants' motion nor the district court's order properly applied the motion to reconsider standard to Logsdon's case. Given that the Court's standard and related guidance are identical on

15

pre-judgment and post-judgment motions to reconsider, there is only one conclusion

when reviewing the order dismissing the action: the district court abused its discretion.[3]

## A. The District Court Erroneously Granted a Motion to Reconsider That Did Not Satisfy This Court's Basic Requirements

It was an abuse of discretion to grant a motion to reconsider that did not show

(a) an intervening change in controlling law, (b) new evidence, or (c) clear error or

manifest injustice.

Instead of grounding the motion to reconsider in any of these three

requirements, the Deputy Marshals, appearing through counsel against a pro se plaintiff,

initially insisted that the district court "appear[ed] to have misapplied binding

---

[3] Indeed, the Deputy Marshals' proffered framing for their motion required summarily dismissing their request to reconsider the district court's order on whether the claim constituted a new *Bivens* context. In citing Federal Rules of Civil Procedure 59(e) and, alternatively, 60(b)(6), Defendants tried to frame their motion to reconsider as one operating in the post-judgment context. Since neither Rule 59 nor Rule 60 governs denials of a motion to dismiss, *see* Fed. R. Civ. P. 59 and 60, Defendants ambitiously argued that Rule 59(e) applies here because the qualified immunity defense allows for the filing of an interlocutory appeal. App. at 115 n.2. Further, they argued that it was appropriate to revisit the *Bivens* question in a Rule 59(e) motion because the question of *Bivens* liability is antecedent to the question of qualified immunity. *Id.* (citing *Liff v. Off. of Inspector Gen. for U.S. Dep't of Lab.*, 881 F.3d 912, 918 (D.C. Cir. 2018)). However, even when drawing a parallel between an interlocutory appeal and a motion to reconsider, this argument fails. On interlocutory appeal, jurisdiction only attaches on whether a *Bivens* remedy exists if the question is "sufficiently implicated by the qualified immunity defense." *Big Cats of Serenity Springs, Inc. v. Rhodes*, 843 F.3d 853, 856 (10th Cir. 2016). In their motion to reconsider, though, Defendants conceded that they "[did] not move for reconsideration of the [district court's] qualified immunity denial . . . ." App. at 126. Thus, taking the Deputy Marshals' arguments at face value, the district court should have immediately declined their invitation to contravene circuit authority and revisit the *Bivens* questions.

precedent" in its analysis. App. at 115. When challenged in opposition, Defendants later argued that this purported misapplication demonstrated "clear error" and identified *Egbert v. Boule*, 142 S. Ct. 1793 (2022), and *Silva v. United States*, 45 F.4th 1134 (10th Cir. 2022) as the relevant binding precedent. App. at 142. But Defendants could not meet clear error's exacting standard with a passing reference to these cases. "Clear error" is defined as a decision that is "unquestionably erroneous," *Error*, Black's Law Dictionary (11th ed. 2019); *see also United States v. Hendrix*, 673 F. App'x 850, 854 (10th Cir. 2016) (describing clear error as a high burden requiring the movant to show the "prior decision was 'dead wrong' not 'just maybe or probably wrong." (citation omitted)). The question under reconsideration was whether Logsdon's case presented a new context. At bottom, *Silva* is not binding precedent on this question—there, a new context was recognized for a constitutional claim different than the one here and different than any claim previously recognized by the Supreme Court in a *Bivens* action. Its issuance could not render the district court's decision "dead wrong." Similarly, as discussed *infra* Section II(A), *Egbert* issued no holding on what constituted a new context. Therefore, the Deputy Marshals provided no basis for relief.

In granting relief for the Deputy Marshals, the district court likewise failed to identify any way in which the motion to reconsider standard was met. In undoing its prior order, the district court did not cite "clear error" and appears to have treated *Mejia v. Miller*, 53 F.4th 501 (9th Cir. 2022) as a type of intervening change in law. App. at 150. But *Mejia* was not controlling law and therefore could not be the basis for

17

reconsideration under the relevant standard. *See Fed. Deposit Ins. Corp. v. Daily*, 973 F.2d 1525, 1532 (10th Cir. 1992) (out-of-circuit decisions are not binding in the Tenth Circuit). Beyond being an out-of-circuit decision, *Mejia* cannot represent a change in controlling law because its facts are too distinguishable from Logsdon's case. *See infra* Section II(B)(1). Because the authority cited by the district court in support of its decision to change course did not reflect a change in controlling authority, the district court abused its discretion. This Court should reverse and remand.

**B. The District Court Erred by Granting a Motion That Merely Recycled Rejected Arguments and Presented Arguments That Were Previously Available**

The Deputy Marshals' motion to reconsider motion was a blatant violation of this Court's prohibition against using a motion to reconsider as "a second chance for the losing party to make its strongest case or to dress up arguments that previously failed." *United States v. Huff*, 782 F.3d 1221, 1224 (10th Cir. 2015) (cleaned up). Though this Court prohibits the recycling of arguments in a motion to reconsider, the content of Defendants' motion was nearly identical to its previously rejected motion. For example, both motions extensively argued that the Supreme Court's decision in *Egbert* impacted Logsdon's case and argued that *Bivens* does not apply because a different agency was involved than was involved in *Bivens* and because the agents here possessed a warrant. Notably, the district court explicitly considered and, citing authority, rejected each of these arguments in its October 21, 2022 order denying the motion to dismiss.

18

Additionally, the arguments and law *introduced* in the motion to reconsider could not meet the necessary criteria because these arguments and cases were either available while the motion to dismiss was briefed or were not controlling authority. The most prominent example is *Silva v. United States*, 45 F.4th 1134 which was raised for the first time in Defendants' reconsideration motion. Despite the impropriety of introducing a previously available case on reconsideration, *Silva* could not in any way affect the district court's prior analysis because, as noted above, it presented a fundamentally different claim and set of facts. Indeed, the district court did not rely on *Silva* when it revisited the "new context" question and did not recognize it as bearing on the district court's initial determination.

Similarly, the Deputy Marshals argued for the first time that Logsdon had alternative remedies under the FTCA and 31 U.S.C. § 3724. Aside from the substantive shortcomings of this argument, *see infra* Section II(C)(1)–(2), these arguments were available to Defendants in their initial motion to dismiss. Neither the FTCA nor 31 U.S.C. § 3724 are newly available statutes. Here too, the Deputy Marshals sought to use the motion to reconsider to revive arguments that the district court initially and properly rejected. Unlike the reliance on *Silva*, the Deputy Marshals' arguments regarding these federal statutes were cited favorably in the district court's order. App. at 152–54. This was an abuse of discretion because these statutes could not serve as adequate remedies and because arguments regarding these statutes were available earlier in litigation.

Because the Deputy Marshals' motion to reconsider did not present controlling law or arguments that were previously unavailable, there was no other basis to grant the Deputy Marshals' motion to reconsider under this Court's requirements. The district court abused its discretion when it granted this motion and when it relied on nonbinding law to do so. This Court should reverse this motion and remand the matter for further proceedings.

## II.   THE DISTRICT COURT ERRED IN DETERMINING THAT LOGSDON CANNOT MAINTAIN A CLAIM UNDER *BIVENS*.

Assuming arguendo that the district court properly revisited the motion to dismiss, the district court erred in its substantive determination of Logsdon's *Bivens* claim. This case is a quintessential *Bivens* case—it represents precisely the set of circumstances where the Supreme Court maintains that *Bivens* applies.

### A. Notwithstanding Recent Limits on *Bivens* in New Contexts, the Supreme Court Has Made Clear That *Bivens* Retains Its Vitality in the Context of Heartland Search-and-Seizure Cases Like Logsdon's.

In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court recognized for the first time an implied cause of action for a constitutional violation caused by federal officers. The plaintiff, Webster Bivens, alleged that officers from the Federal Bureau of Narcotics conducted an arrest and search without a warrant, arrested him without probable cause, and that "unreasonable force was employed in making the arrest." *Bivens*, 403 U.S. at 389. Recognizing that there was no federal analogue to 42 U.S.C § 1983, which created liability for

20

constitutional tortfeasors acting under the color of state law, the Court proclaimed that the "'very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury.'" *Id.* at 397 (quoting *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163 (1803)). It then held that Bivens was "entitled to recover money damages for any injuries he has suffered as a result of the agents' violation of the [Fourth] Amendment." *Id.* at 397.

Following *Bivens*, the Supreme Court recognized implied caused causes of actions in two other contexts: in *Davis v. Passman*, 442 U.S. 228 (1979), where a former congressional staffer brought a Fifth Amendment claim of sex discrimination, and in *Carlson v. Green*, 446 U.S. 14 (1980), where a federal prisoner brought an Eighth Amendment claim for failure to provide adequate medical treatment.

More recently, the Court has established a two-step inquiry for analyzing *Bivens* claims. The first question is whether the case presents "a new *Bivens* context," i.e., do the facts present a context that is "'meaningful[ly]' different" from the three cases in which the Supreme Court has already implied a damages action. *Egbert v. Boule*, 142 S. Ct. 1793, 1803 (2022) (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 139–40 (2017)). If not, the claim proceeds. If the claim does arise in a new context, then courts must consider whether "there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* (quoting *Abbasi*, 582 U.S. at 136).

In other words, the necessary analysis is different—and more straightforward—when a case calls for mere application of *Bivens*. In those scenarios, the case law has remained undisturbed—*Bivens* applies where the Supreme Court previously recognized an implied cause of action. Given the circumstances of *Bivens* itself, this plainly includes the viability of a damages remedy where an individual was subject to excessive force during an arrest by federal officers, absent special considerations like border enforcement or national security.

Indeed, though the Supreme Court has explicitly articulated "judicial disfavor" toward expanding *Bivens*, it has also affirmatively maintained its applicability in Fourth Amendment cases like this one where *Bivens* already applies. As recently as 2017, the Court cautioned that its "opinion [restricting *Bivens'* reach] is not intended to cast doubt on the continued force, or even the necessity, of *Bivens* in the search-and-seizure context in which it arose." *Abbasi*, 582 U.S. at 134. This panel reaffirmed that *Bivens* "vindicate[s] the Constitution by allowing some redress for injuries" and noted that "it provides instruction and guidance to federal law enforcement officers . . . ." *Id.* Finally, as is particularly relevant to this appeal, in describing the search-and-seizure context, the Court noted that the "settled law of *Bivens* in this common and recurrent sphere of law enforcement, and the undoubted reliance upon it as a fixed principle in the law, are powerful reasons to retain it in that sphere." *Id.*

Last year, in *Egbert* the Supreme Court further warned against expanding the judiciary's powers, but this guidance did not apply to the threshold question of whether

a claim presented a new context. Rather, the Court's analysis was focused on instances where courts sought to "infer a new *Bivens* cause of action," 142 S. Ct. at 1804, or "create a damages remedy," *id.* at 1803; *accord id.* at 1802–04 (framing the discussion as an expansion of *Bivens* through the repeated use of the following phrases: "creating a cause of action," "fashion a *Bivens* remedy," "provide for such a damages remedy," etc.). Put differently, *Egbert* had no impact on claims governed by the existing remedies of the Court. *Id.* at 1804 (noting that the key question for the Court's analysis was who should "decide whether *existing* remedies 'should be *augmented* by the *creation* of a *new* judicial remedy'" (emphasis added) (quoting *Bush v. Lucas*, 462 U.S. 367, 388 (1983)).[4]

In presenting its holding, the *Egbert* court explicitly noted that "to decide the case before us, we need not reconsider *Bivens* itself," *Id.* at 1809. And in deciding to review the matter, the Court denied certiorari on Petitioner Egbert's third question presented:

---

[4] Despite *Egbert*'s focus on creating remedies and causes of actions, a panel of this Court in *Silva* noted that *Egbert* "appeared to alter the existing two-step *Bivens* framework" into a single question: "'whether there is any reason to think that Congress might be better equipped to create a damages remedy.'" *Silva*, 45 F.4th at 1139 (quoting *Egbert*, 142 S. Ct. at 1803). This, however, was not what the Supreme Court had instructed. The Supreme Court actually noted that, in analyzing a *Bivens* claim, the two steps "*often* resolve to a single question." *Egbert*, 142 S. Ct. at 1803 (emphasis added). While it is true that many claims will fall outside of existing *Bivens* contexts, the threshold question for courts is still whether a claim presents a new context. Therefore, what was observed is not a change in the standard. Indeed, the *Silva* panel recognized that the two-step framework was reaffirmed in *Abbasi* and *Hernandez*, *Silva*, 45 F.4th at 1139, and that *Egbert* does not overrule either case, *id.* at 1139 n.4. Since that panel declined to "address or resolve any tension" between *Egbert* and those cases, *id.*, the standards outlined in *Abbasi* and *Hernandez* remain good law in this Circuit.

"Whether the Court should reconsider *Bivens*." *See* Order, *Egbert v. Boule,* 142 S. Ct. 457 (2021) (mem.); Petition for Writ of Certiorari, *Egbert v. Boule*, No. 21-147, 2021 WL 3409109, at *i.

This Court, of course, therefore remains bound by *Bivens* and must fairly apply the decision. S*ee, e.g., Contreras ex rel. A.L. v. Dona Ana Cnty. Bd. of Cnty. Comm'rs*, 965 F.3d 1114, 1130 n.3 (10th Cir. 2020) ("Absent the Supreme Court overturning its own precedent or our own, we are bound by it."); *see also United States v. Goines*, No. 20-3183, 2021 WL 4544098, at *1 (10th Cir. Oct. 5, 2021), *cert. denied*, 142 S. Ct. 1167 (2022) (noting that adherence to existing Supreme Court precedent "becomes no less binding on our decisions if the reasoning of a prior Supreme Court decision is undermined by a subsequent decision" or dissent). This would be consistent with other Courts of Appeals that have maintained applicability of *Bivens* to standard Fourth Amendment encounters with rank-and-file federal officers. *See e.g., Hicks v. Ferreyra*, 64 F.4th 156, 166 (4th Cir. 2023) (rejecting argument that encounter with line level federal officers doing routine criminal law enforcement presented new context); *Greenpoint Tactical Income Fund LLC v. Pettigrew*, 38 F.4th 555, 564 n.2 (7th Cir. 2022) ("The opinion in *Egbert* is consistent with the Court's cutting back on the scope of *Bivens* but does not change our understanding of *Bivens*' continued force in its domestic Fourth Amendment context.").

Given that Logsdon's claim exists within the heartland of *Bivens* and relates to the "common and recurrent" search-and-seizure context for federal officials, the lower court erred in treating this matter as a "new context."

24

### B. The Deputy Marshals' Use of Excessive Force Against Logsdon Is Squarely Covered by *Bivens* and Does Not Present a New Context.

A federal official's use of unreasonable force during an arrest is an archetypal *Bivens* claim and, absent a meaningful factual difference, calls for straightforward recognition of a damages remedy. The facts of Logsdon's arrest and the *Bivens* case are not different in any meaningful way and therefore do not present a new context.

The current standard for determining a new context comes from *Abbasi*. In that case, the Supreme Court provided a list of factors to help determine whether a *Bivens* claim presented a meaningful difference, and therefore a new context. These factors include:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Abbasi*, 582 U.S. at 140. In defining when a new context may arise, the Court was explicit that "[s]ome differences, of course, will be so trivial that they will not suffice to create a new *Bivens* context." *Id.* at 149. Despite this admonition against treating inconsequential details as meaningful differences, the district court found significance in minor factual differences and concluded that Logsdon's claim presented a new context. As noted above, this was reversible error.

In changing course on its prior determination that Logsdon's claim did not present a new context, the district court relied on three aspects of the arrest: (1) that the officers

violating the Fourth Amendment were not agents of the Federal Bureau of Narcotics (or its successor agency, the Drug Enforcement Administration), (2) that the arrest took place pursuant to a warrant, and (3) that the arrest occurred outside of a third-party's home. App. at 151. However, none of these differences are relevant to the Fourth Amendment right to be free from excessive force, and none of them implicate the considerations that *Abbasi* identifies as potentially creating a new context for *Bivens* purposes.

Beginning with *Abbasi*, none of the factors identified by the Supreme Court apply in this case. As in *Bivens*, Logsdon's claim involves line level officers and implicates the right to be free from "unreasonable force." *See Bivens*, 403 U.S. at 389. As a Fourth Amendment claim arising within the "common and recurrent" sphere of policing, there is ample authority defining unreasonable force when apprehending an individual; the district court correctly concluded as much in its initial order. *See Graham v. Connor*, 490 U.S. 386, 395 (1989); *see also* App. at 106 (citing same). This case does not meaningfully differ from *Bivens* since the law enforcement officers were seeking to apprehend an individual in a domestic context lacking special status. *See Egbert*, 142 S. Ct. at 1805 (recognizing a special context where "national security is at issue."); *Hernandez v. Mesa*, 140 S. Ct. 735, 746–47 (2020) (recognizing a special context where border security and foreign relations are at issue); *cf. Mejia v. Miller*, 61 F.4th 663, 668 (9th Cir. 2023) (recognizing a special context in federally owned public land). And there is no risk of "disruptive intrusion by the Judiciary into the functioning of other branches." *Abbasi*,

582 U.S. at 140. As a direct application of *Bivens* and its prohibition against the use of unreasonable force by a federal officer, the other branches have long ago recognized a *Bivens* remedy in this context and will not be disrupted by *continued* recognition of the remedy. *See e.g., Carlson*, 446 U.S. at 19–20 (noting that the "FTCA was enacted long before *Bivens* was decided, but when Congress amended FTCA in 1974 to create a cause of action against the United States for intentional torts committed by federal law enforcement officers, 28 U.S.C. § 2680(h), the congressional comments accompanying that amendment made it crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action").

The categories identified by the district court also cannot constitute meaningful differences. The *Bivens* decision would cease to apply in heartland excessive force cases under the district court's approach to trivial differences. But as the Court noted in the case guiding new context determinations, *Bivens* applies with "continued force" and "necessity" in the "search-and-seizure context in which it arose." *Abbasi*, 582 U.S. at 134. By specifically pointing out that *Bivens* "provides instruction and guidance to federal law enforcement officers *going forward*" and is "settled law" in "this *common and recurrent* sphere of law enforcement," *id.* (emphasis added), it cannot follow that "the search-and-seizure context in which [*Bivens*] arose" is so narrowly cabined to the exact circumstances of the case that it is neither "common" nor "recurrent." *Id.* Rather, the natural read is that the Court recognized implied rights of action are established in three contexts and distinguished those three contexts from the myriad situations in which the

27

Court had found that a new context arose. Indeed, two paragraphs later, the *Abbasi* Court provided a list of situations where a new context existed. *See id.* (citing *FDIC v. Meyer*, 510 U.S. 474, 473–74 (1994) (suing an agency versus an individual official); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 63 (2001) (suing a private contractor instead of an individual official); *Bush v. Lucas*, 462 U.S. 367, 390 (1983) (raising a First Amendment claim)). Tellingly, none of these cases identified as new contexts in *Abbasi* are Fourth Amendment claims where minor differences in how an individual was apprehended created a new context.

On the contrary, since *Bivens* was decided, the Court has described *Bivens'* applicability broadly and in a way that can be summarized as: the recognition of damages relief for violations of the Fourth Amendment by rank-and-file federal officers. As Justice Scalia described in 2006, "Citizens whose Fourth Amendment rights were violated by federal officers could not bring suit until . . . this Court's decision in *Bivens.*" *Hudson v. Michigan*, 547 U.S. 586, 597 (2006); *see also Malesko*, 534 U.S. at 66, 70 (noting *Bivens* "held that a victim of a Fourth Amendment violation by federal officers may bring suit for money damages against the officers in federal court" and "[t]he purpose of *Bivens* is to deter individual officers from committing constitutional violations." (Rehnquist, C.J.)). Even in 2020, in its only case finding a new context since *Abbasi*, the Supreme Court likewise described *Bivens'* holding in broad terms and relied heavily on national security implications to determine that a cross-border shooting created a new context. As Justice Alito noted in the majority opinion:

28

> *Bivens* concerned an allegedly unconstitutional arrest and search carried out in New York City . . . . There is a world of difference between [that] claim[] and petitioners' cross-border shooting claims, where the risk of disruptive intrusion by the Judiciary into the functioning of other branches is significant . . . . A cross-border shooting is by definition an international incident; it involves an event that occurs simultaneously in two countries and affects both countries' interests.

*Hernandez*, 140 S. Ct. at 744 (cleaned up); *see also Egbert*, 142 S. Ct. at 1805 ("[A] *Bivens* cause of action may not lie where, as here, national security is at issue.").

In contrast to the "meaningful difference" between *Hernandez* (which implicated unique cross-border concerns) and *Bivens* (a heartland Fourth Amendment excessive force case), there is no meaningful difference between the context of this case and *Bivens*. Certainly, for the purposes of determining the context, there is no significance to the facts that the arresting officers were from the USMS instead of the Drug Enforcement Administration, that there was a warrant for the arrest that accompanied the unjustified use of force, nor that Defendants pummeled Logsdon on a friend's property.

### 1.  *Officers from a Different Agency Do Not Trigger a New Context.*

Alleging a claim against officers from a different agency than the one in *Bivens* is not a meaningful difference. When outlining a list of factors that may constitute a new context, the *Abbasi* Court indicated that the "*rank* of the officers involved" is relevant to whether a claim presents a new context. 582 U.S. at 140 (emphasis added). In *Abbasi*, the rank of the officers was different than in *Bivens* because the defendants were agency

29

heads, including the Attorney General and FBI Director.[5] 582 U.S. at 140. In discussing the claims against these executives, the Court noted that "a *Bivens* action is not a proper vehicle for altering an entity's policy" and added that "The purpose of *Bivens* is to deter the officer. *Bivens* is not designed to hold officers responsible for acts of their subordinates." *Id.* at 140–41 (cleaned up).

Similarly, even though the Supreme Court has noted that "a new category of defendants" may create a new context, that does not apply here. The "new category of defendants" language emerges from *Correctional Services Corporation v. Malesko*, 534 U.S. at 68. However, the facts of *Malesko* are instructive, as that case involved a *Bivens* claim brought against a *private corporation* operating as federal contractor. *Id.* at 63; *see also FDIC*, 510 U.S. at 473–74 (no *Bivens* claim against entire agency). The Supreme Court has never recognized a simple difference in law enforcement agency as a new category of defendant. Even in *Hernandez*, a post-*Abbasi* case involving the use of force by an agent from the U.S. Customs and Border Protection Agency, the Court did not find "a new category of defendants." 140 S. Ct. at 743–44. Rather, as noted above, the Court concluded that a new context existed because of the impact on foreign relations and national security and the need to protect the separation of powers in those spheres. *Id.* at 745–47.

---

[5] The warden and associate warden of the petitioners' detention center were also identified as defendants. Notably, the Supreme Court did not reverse the dismissal of the claim against the warden and remanded the case for additional proceedings on that claim.

While the rank of officers or category of defendants involved may be one factor suggesting a new context, nothing in *Abbasi* indicates that a new context arises whenever a different federal agency than the one in *Bivens* is involved. Neither the Supreme Court nor this Court has ever raised the noninvolvement of the DEA or Federal Bureau of Narcotics as a trigger for considering the special factors analysis in Fourth Amendment cases brought against federal officers. To the contrary, the Supreme Court has recognized a Fourth Amendment violation where a *Bivens* claim was brought against Deputy U.S. Marshals like those sued by Logsdon. *Wilson v. Layne*, 526 U.S. 603, 614 (1999).

Recently, this Court ruled on two excessive force *Bivens* claims brought against Deputy U.S. Marshals without finding that a different federal agency triggered a new context. In both of these post-*Abbasi* cases, this Court instead focused on questions of qualified immunity and treated the availability of a *Bivens* claim as a given. *See e.g.*, *Alvarado-Escobedo v. United States*, 817 F. App'x 536, 541 (10th Cir. 2020) (analyzing whether Deputy Marshal used excessive force during execution of warrant), *Serrano v. United States*, 766 F. App'x 561 (10th Cir. 2019) (analyzing whether Deputy Marshals used excessive force in effectuating arrest), *see also Smith v. Arguello*, 415 F. App'x 57 (10th Cir. 2011) (pre-*Abbasi* case analyzing whether Deputy U.S. Marshals used excessive force in effectuating arrest). Even more pointedly, this Court has recognized

31

that individuals subjected to excessive force by deputy marshals may proceed under *Bivens*. *Trapp v. U.S. Marshals Serv.*, 139 F. App'x 12 (10th Cir. 2005).[6]

Additionally, this Court has repeatedly analyzed and recognized *Bivens* claims against rank-and-file federal officers from various other agencies in the search-and-seizure context. This includes claims brought against officers from the Internal Revenue Service, *Wellington v. Daza*, No. 21-2052, 2022 WL 3041100, at *4 (10th Cir. Aug. 2, 2022), *cert. denied*, 143 S. Ct. 788 (2023); Federal Bureau of Investigation, *Est. of Redd by & through Redd v. Love*, 848 F.3d 899, 903 (10th Cir. 2017); the Bureau of Alcohol, Tobacco, Firearms, and Explosives, *Thomas v. Durastanti*, 607 F.3d 655, 660 (10th Cir. 2010); the U.S. Secret Service, *Mick v. Brewer*, 76 F.3d 1127, 1130 (10th Cir. 1996), and even a security guard at a federal building, *Engle v. Mecke*, 24 F.3d 133, 134 (10th Cir. 1994).

There is simply no constitutional basis for the district court's ruling, which would result in DEA officers—but not other federal officers of the same rank—being accountable for Fourth Amendment violations. In reaching a contrary determination, the district court mostly relied on *Mejia v. Miller* from the Ninth Circuit. 53 F.4th 501 (9th Cir. 2022), *amended and superseded*, 61 F.4th 663 (2023). In *Mejia*, a Bureau of Land Management officer shot a plaintiff on federal property in a public national park. *Id.* at

---

[6] Numerous other courts have agreed. *See, e.g.*, *Solomon v. Petray*, 795 F.3d 777, 786 (8th Cir. 2015) (analyzing qualified immunity for deputy marshals in *Bivens* action); *Harris v. Roderick*, 126 F.3d 1189, 1192 (9th Cir. 1997) (analyzing qualified immunity to deputy marshals on excessive force claim).

32

503. The Ninth Circuit determined that the case presented a new context because of the Bureau of Land Management's special authority to operate on BLM-managed public lands, where the plaintiff "had no expectation of privacy." *Id.* at 668. The opinion focused on specific consequences that flow from "BLM's mandate to maintain order on federal lands," *id.* at 668; this language tracked with appellant Miller's argument that his case presented a new context because "BLM and National Park Service officers attempt[] to maintain order in a *busy national park, implicating the safety and security of a public space.*" Suppl. Letter Br. by Order of the Ct. on Aug. 12, 2022 at 4, 61 F.4th 663 (9th Cir. 2023) (No. 21-56282), ECF No. 26 (emphasis added). That BLM is separate from the DEA was not dispositive and the panel did not find a new category of defendants.[7] The *Mejia* context is wholly dissimilar from Logsdon's case, which arose from an assault that took place outside his friend's home—on private property—where the USMS has no special powers. Therefore, the district court erred by relying on *Mejia* to find that Logsdon's claim introduced a new category of defendants.

And generally, the district court incorrectly held that Logsdon's claim arose "against a new category of defendants such as Deputy U.S. Marshals." App. at 152. Quite the contrary; "Fourth Amendment *Bivens* causes of action have been routinely

---

[7] In amending and superseding the initial opinion in March 2023, the Ninth Circuit removed dicta speculating whether a new *Bivens* context exists "even if only the officer's employing agency is different." *Compare* 53 F.4th at 506 *with* 61 F.4th at 668. This is further support that *Mejia* never found that separate agencies are sufficient to establish a new category of defendants.

applied to the conduct of . . . federal marshals . . . ." *Big Cats of Serenity Springs*, 843 F.3d at 864.

### 2. A New Context Is Not Triggered by a Federal Officer's Possession of a Warrant.

The law of the Supreme Court and this Court does not support limiting the availability of existing *Bivens* remedies to encounters without a warrant. For one thing, warrants are not one of the *Abbasi* Court's enumerated bases for finding a new context. 582 U.S. at 140. Additionally, while a warrant may sometimes have legal import in alleged Fourth Amendment violations like unreasonable searches, it cannot represent a meaningful difference from *Bivens* for an excessive force claim. Though the *Bivens* decision discusses warrants, it is notable that Bivens alleged *multiple* violations of his Fourth Amendment rights, including "that the arrest was made without probable cause," "that the arrest and search were effected without a warrant, *and* that unreasonable force was employed in making the arrest . . . ." *Bivens*, 403 U.S. at 389 (emphasis added). Here, the district court did not and could not explain how a warrant brought the claim outside of the core *Bivens* analysis. Nor could it explain why a warrant has legal significance in any excessive force case like this one. *See Davis v. Clifford*, 825 F.3d 1131, 1137 (10th Cir. 2016) (finding clearly established right to be free from excessive force even during arrest pursuant to a warrant).

Indeed, even in an unreasonable search claim, where the possession of a warrant has direct relevance, the Supreme Court has previously recognized *Bivens'* applicability

34

to the violation of the Fourth Amendment by deputy marshals in possession of a warrant. In *Wilson v. Layne*, the Court assumed the viability of *Biven*s actions against agents from the USMS and only denied relief on the grounds of qualified immunity. 526 U.S. 603 at 614–17. The qualified immunity question turned on the clearly established prong, and the Court determined that there was no clearly established law that provided notice to the officers. *Id.* at 617. Significantly, prior to dismissing the action, Chief Justice Rehnquist, writing for the Court, found that "it is a violation of the Fourth Amendment for police to bring members of the media or other third parties into a home during the execution of a warrant when the presence of the third parties in the home was not in aid of the execution of the warrant." *Id.* at 614.

Likewise, the district court failed to consider several cases from this Circuit where *Bivens* cases were examined on their merits and where the officers were acting pursuant to a warrant. *See e.g., Wellington*, 2022 WL 3041100, at *1 (post-*Abbasi* case dismissing action brought against IRS agents on qualified immunity grounds); *Serrano*, 766 F. App'x at 564 (dismissing excessive force claim against deputy marshals on qualified immunity grounds); *Salmon v. Schwarz*, 948 F.2d 1131, 1134 (10th Cir. 1991) (allowing unreasonable search and seizure claim against FBI agents to proceed); *cf. Alvarado-Escobedo*, 817 F. App'x at 540, 542 (dismissing excessive force claim brought against deputy marshal on qualified immunity grounds where agent possessed search warrant).

35

### 3.    A New Context Is Not Triggered by the Constitutional Violation Occurring Outside of One's Home.

Finally, the district court was incorrect to conclude that a new context arises where a Fourth Amendment violation occurs outside of one's home. As a threshold point, the fact that the events in *Bivens* took place in plaintiff Bivens' home held no significance for his excessive force claim or future excessive force claims. *See Bivens*, 403 U.S. at 389. At best, the setting of *Bivens* could only matter for an allegation of an unreasonable search since the home carries different protections. For examining one's arrest and the force used therein, the setting is immaterial since excessive force claims are examined identically inside and outside of one's home. *See Graham,* 490 U.S. at 396 (outlining the relevant factors for determining the reasonable level of force to effect a seizure as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight"). Simply put, the setting of an excessive force violation is not a material fact and is therefore not a meaningful difference.

Unsurprisingly, then, whether excessive force occurs in one's home is not a listed difference that triggers a new context under *Abbasi.* 582 U.S. at 140. This is consistent with other controlling authority. As noted above, the Supreme Court examined an excessive force claim in *Hernandez* and found a new context because of the cross-border aspect of it, not the fact that it occurred outside of the decedent's home. 140 S. Ct. at 744 (noting "there is a world of difference between . . . cross-border shooting claims"

36

and "unconstitutional arrest and search carried out in New York City"). Similarly, that excessive force allegedly occurred away from a claimant's home has historically been of no significance to this Court in *Bivens* cases. *See e.g., Serrano,* 766 F. App'x at 564, 572 (ruling on qualified immunity where deadly force was used on public street outside decedent's sister's home); *Thomas v. Durastanti,* 607 F.3d 655, 671 (10th Cir. 2010) (ruling on qualified immunity where deadly force was used at convenience store parking lot); *Mick v. Brewer,* 76 F.3d 1127, 1129 (10th Cir. 1996) (certifying dismissal under Fed. R. Civ. P. 54(b) where Secret Service agent used force during traffic stop).

In finding the setting of the assault meaningfully different from *Bivens*, the district court relied on two cases that are both out-of-circuit and factually inapposite. The first is *Mejia,* which involved an encounter on federally owned public land specially managed by BLM. As discussed above, this setting was significantly different than a private residence, or even public streets, and has no bearing on Logsdon's case.

The second case is *Young v. City of Council Bluffs,* a district court opinion from the Southern District of Iowa that should not have been given weight by the lower court. 569 F. Supp. 3d 885 (S.D. Iowa 2021). In *Young,* the plaintiff alleged that federal officers violated his Fourth Amendment rights when they arrested him at gunpoint away from his home, after mistaking him for another fugitive with the same first name, last name, middle initial, and date of birth. *Id.* at 891. In finding a new context, the *Young* court relied on none of the types of meaningful difference outlined in *Abbasi* and conducted no substantive analysis. *Id.* at 893. Rather, it concluded, without discussion, that there

37

was a new context because the "alleged wrongful conduct is different." *Id.* Relying solely on descriptive differences, there was no discussion as to why the existing *Bivens* remedy was unsuitable, nor what was *meaningful* about trivial differences. *Id.* Instead, the court treated every factual difference as meaningful. *See id.* (finding, without explanation, that officer's threat to shoot plaintiff was meaningfully different than *Bivens* defendants threat to arrest family members). Such an approach would eviscerate *Bivens* and is inconsistent with the guidance in *Abbasi* regarding *Bivens'* applicability in heartland cases.

*Young* and *Mejia* provide only threadbare support for the district court's finding that incidents outside of one's home are automatically a new *Bivens* context. The district court erred by reaching this conclusion.

\* \* \*

For the foregoing reasons, the district court erred in finding that Logsdon's claim presented a new context. Since this is a valid cause of action that exists within *Bivens'* heartland, the district court's order should be reversed and remanded with instructions to reinstate the case.

## C. Even If Logsdon's Claim Presents a New Context, No "Special Factors" Warrant Foreclosing a Remedy.

Even if this case did implicate a new context, a *Bivens* claim is not barred simply because it arises in a new context. Rather, courts should only deny a *Bivens* remedy "if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Abbasi*, 582 U.S. at 136 (quoting *Carlson*, 446 U.S. at 18). Although courts

have not precisely defined what such "special factors" may be, the core inquiry is whether "[the judiciary], rather than the political branches, is better equipped" to recognize a cause of action. *Egbert*, 142 S. Ct. at 1804. Only where there are "sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy" should a new *Bivens* context be denied. *Abbasi*, 582 U.S. at 149. By contrast, where no such reasons exist, *Bivens* claims arising in new contexts should be recognized. *See, e.g.,* *Lanuza v. Love*, 899 F.3d 1019, 1028 (9th Cir. 2018). Therefore, if this Court finds that Logsdon's claim requires an expansion of *Bivens*, this is the exceptional case where a *Bivens* remedy is warranted in a slightly new context. This is so regardless of the Supreme Court's warning that "expanding the *Bivens* remedy is now considered a 'disfavored' judicial activity." *Abbasi*, 582 U.S. at 135 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).

The district court identified two "special factors" that, in its view, demonstrated that no *Bivens* remedy is available here: the availability of alternative remedies and the fact that Logsdon's claim was brought against a purportedly new category of defendants. Both those determinations constituted error.

The district court held that Logsdon had three alternative remedies available to him: the FTCA, an administrative complaint form available on the United States Marshals website, and a report to the Office of the Inspector General (OIG). But none of those three is adequate. The Supreme Court has expressly held that the FTCA does *not* replace a *Bivens* remedy for constitutional violations. And a discretionary complaint

39

form—which guarantees no procedure, or even a response—does not come close to the comprehensive administrative remedial schemes this Court and the Supreme Court have previously found adequate to displace *Bivens*. Finally, the fact that the Supreme Court decided *Bivens* and created the federal remedy before the passage of the Inspector General Act, then continued to expand it afterwards, is strong evidence that *Bivens* remedies are not unavailable solely because of the existence of the OIG.

Second, the district court stated—in a single sentence—that this case presented a claim involving a new category of defendants, which automatically rendered *Bivens* unavailable. But that conclusory assertion is incorrect on the facts—as discussed above, a new category of defendants has previously meant a private corporation or entire agency. It cannot simply mean raising claims against officials from different agencies as both the Supreme Court and this Court have considered *Bivens* actions brought against deputy marshals, as have numerous other courts. As a matter of law, the district court's summary reasoning eviscerates the second step of the *Bivens* inquiry, suggesting that the new context *itself* is a special factor warranting denial of the remedy.

### 1.    *Logsdon Has No Adequate Alternate Remedies.*

Not every alternate potential remedy is sufficient to displace *Bivens*. As this Court has recognized, only those remedies which are "constitutionally adequate" warrant foreclosing *Bivens*. *Big Cats of Serenity Springs, Inc. v. Rhodes*, 843 F.3d 853, 859 (10th Cir. 2016) (quoting *Bush v. Lucas*, 462 U.S. 367, 379 n.14 (1983)). In analyzing the adequacy of a proposed alternative remedial scheme, courts must consider "the nature and extent

of the statutory scheme created by Congress and assess the significance of that scheme in light of the factual background of the case at hand." *Id.* at 861. Since *Big Cats of Serenity Springs, Inc.*, this Court and the Supreme Court have clarified that remedial schemes generated by the Executive may also satisfy this requirement, so long as they satisfy the same review. At bottom, a remedial scheme must be "sufficient to secure an adequate level of deterrence" for individual officers to avoid future misconduct. *Egbert*, 142 S. Ct. at 1807; *accord Silva v. United States*, 45 F.4th 1134, 1141 (10th Cir. 2022) (noting that Executive may also foreclose *Bivens* remedy by providing a scheme "sufficient to secure an adequate level of deterrence"). Neither Defendants nor the district court conducted this analysis. Had they done so, it would have been clear that none of their suggested alternatives—the FTCA, a U.S. Marshals administrative complaint form, nor a report to the OIG—meet this standard.

### a.    The FTCA Does Not Preempt *Bivens*.

First, following the motion to reconsider, the district court determined that Logsdon could have brought suit under the FTCA. App. at 153–54. But in *Carlson*, the Supreme Court expressly held that the FTCA is *not* an alternative remedy that displaces *Bivens* actions, finding "nothing in the [FTCA] or its legislative history to show that Congress meant to pre-empt a *Bivens* remedy . . . ." 446 U.S. at 19. Rather, the Court found it "crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action[.]" *Id.* at 20. Importantly, the *Carlson* Court explained that *Bivens* was necessary in addition to the FTCA in order to secure adequate deterrence. *Id.* at 21

41

("Because the *Bivens* remedy is recoverable against individuals, it is a more effective deterrent than the FTCA remedy against the United States."). The Court has reemphasized this point in later decisions. *See Bush*, 462 U.S. at 378 (emphasizing that the FTCA is not "a substitute for a *Bivens* [claim]"); *Wilkie v. Robbins*, 551 U.S. 537, 553 (2007) (noting that the "FTCA and *Bivens* remedies were 'parallel, complementary causes of action' and that the availability of the former did not preempt the latter" (quoting *Carlson*, 446 U.S. at 20).

Before the district court, the deputy U.S. Marshals largely ignored *Carlson* in their briefing, using a single footnote to suggest that *Carlson* is "no longer persuasive or dispositive on this point." App. at 123 n.10. But overruling *Carlson* is for the Supreme Court, not the Defendants, to do. And, contrary to the Deputy Marshals' position, the Supreme Court has repeatedly—and recently—reaffirmed *Carlson*'s vitality, adhering to the principle that *Bivens* actions and FTCA remedies may proceed in parallel. *See, e.g.*, *Tanzin v. Tanvir*, 141 S. Ct. 486, 491 (2020) (acknowledging that Westfall Act's amendments to FTCA "left open claims for constitutional violations"); *Simmons v. Himmelreich*, 578 U.S. 621, 628 n.4 (2016) (noting that FTCA's exclusive remedies provision did not apply to "suits alleging constitutional violations"—in other words, *Bivens* suits). Indeed, this Court heeded that direction in *Serrano v. United States*, allowing a plaintiff to pursue claims under both *Bivens* and the FTCA in the same action. 766 F. App'x at 570–71. And the Supreme Court subsequently explicitly reaffirmed that Congress "made clear that it was not attempting to abrogate *Bivens*" through the FTCA.

42

*Hernandez*, 140 S. Ct. at 748 n.9. Thus, *Carlson* remains good law for the proposition that the FTCA does not replace a *Bivens* remedy.

Nor is *Carlson*'s vitality inconsistent with the Court's recent narrowing of the *Bivens* remedy. The Court has continued its focus on the need for a proposed alternative to "secure[] adequate deterrence"—precisely the rationale relied upon by the *Carlson* Court. *See, e.g.*, *Egbert*, 142 S. Ct. at 1807.[8]

### b.   The Existence of an Administrative Complaint Form Does Not Preempt Bivens.

The district court next reasoned that an aggrieved person's ability to file a complaint form online counted as an adequate remedy for Logsdon. In some cases, administrative remedial schemes may provide an adequate alternative remedy to a *Bivens* action. *See, e.g.*, *Silva*, 45 F.4th at 1141 (finding BOP administrative grievance procedure a reason to deny *Bivens* remedy). But the administrative regimes deemed adequate by this Court and the Supreme Court share an important feature lacking here: they are all governed by regulatory frameworks that (1) mandate investigation into every complaint; and (2) provide clear procedural rules by which the investigations will occur.

For example, the BOP Administrative Grievance Procedure cited by this Court in *Silva* mandates that officials "shall . . . [c]onduct an investigation into each [complaint or appeal] and [r]espond to and sign all [complaints or appeals]." 28 C.F.R. § 542.11(a).

---

[8] Indeed, the only part of *Carlson* that the Supreme Court has since backed away from is *Carlson*'s focus on the availability of monetary damages. *Egbert*, 142 S. Ct. at 1808.

The relevant regulations also provide that investigations shall be promptly concluded within specified time frames, depending on whether the investigation occurs at the facility level (20 days) or at a higher level within the agency (up to 40 days). 28 C.F.R. § 542.18. And to prepare their claims, complainants have a right to access an index of anonymized prior complaints and responses to compare the response to their complaints against similar past complaints. 28 C.F.R. § 542.19. Similarly, the Border Patrol regulations approved by the Supreme Court in *Egbert* mandate that all complaints "shall be referred promptly for investigation . . . ." 8 C.F.R. § 287.10(c). The results of those investigations "shall be referred promptly for appropriate action . . . ." *Id.*

By contrast, the complaint process at issue here exists in a regulatory blank space: it is *not* mandatory, guarantees *no* actual investigation, and has *no* rules for its operation. Rather, the only regulation governing the program—and the one cited by the district court—is the regulation governing "general functions" of the USMS as a whole. 28 C.F.R. § 0.111. The regulation enumerates the seventeen powers the Director of the USMS "shall" have, which include "[i]nvestigation of alleged improper conduct on the part of U.S. Marshals Service personnel." 28 C.F.R. § 0.111(n). The regulation is not a specific mandate for the USMS to investigate anything; rather, it is a grant of authority to do so.[9] The district court recognized as much, citing the agency's "authority to

---

[9] The district court's passing reference to the Attorney General's statutory authority to settle claims against DOJ employees through the administrative process, 31 U.S.C. § 3724, is insufficient to displace *Bivens* for similar reasons. It is merely a discretionary

investigate any alleged misconduct." App. at 152 n.2. But the power to investigate is not the duty to do so. And even if the USMS or DOJ choose, in their discretion, to investigate a complaint, there is no procedure, no timeline, and indeed no requirement to do anything with the results of the investigation.

### c.     The Existence of the OIG Does Not Foreclose Bivens.

The district court, in a footnote without analysis, also suggested that Logsdon's ability to file a complaint with the OIG, the oversight body within DOJ charged with investigating "criminal wrongdoing or serious administrative misconduct," 28 C.F.R. § 0.29c(a), warranted foreclosing *Bivens* altogether. App. at 152. But the OIG is not a replacement for *Bivens* for two main reasons.

First, the relevant regulations empower the OIG to investigate two categories of allegations: "criminal wrongdoing or serious administrative misconduct." 28 CFR § 0.29c. But to be an alternative remedy, a scheme must provide "safeguards to prevent *constitutional violations* from recurring." *Egbert*, 142 S. Ct. at 1806 (cleaned up) (emphasis added). Because the lion's share of constitutional claims will not involve a violation of criminal law, the question thus becomes whether or not enforcing administrative policies would adequately deter Fourth Amendment violations. A comparison to the regulations at issue in *Egbert* illustrates the point. In finding a regulatorily-mandated administrative complaint and investigation process sufficient to displace *Bivens*, the

---

grant of authority rather than a mandated procedure for processing and investigating a complaint.

Court referred to the substantive restrictions on Border Patrol agents' use of force—which track, and are at times *more* protective than, the traditional Fourth Amendment analysis governing excessive force claims. *See id.* (citing 8 C.F.R. § 287.10(a)–(b), which incorporate the substantive provisions of 8 C.F.R. § 287.8). Under those regulations, a Border Patrol agent violates policy if they do not use the "minimum non-deadly force necessary" to effect an arrest or detention. 8 C.F.R. § 287.8(a)(1)(iii). This standard is more exacting than the Fourth Amendment's requirements. *Cf. Marquez v. City of Albuquerque*, 399 F.3d 1216, 1222 (10th Cir. 2005) (noting that "'the Fourth Amendment does not require [police] to use the least intrusive means in the course of a detention'" (quoting *United States v. Melendez-Garcia*, 28 F.3d 1046, 1052 (10th Cir. 1994)). It is thus difficult to imagine an officer violating the Fourth Amendment without also violating the relevant regulations. Enforcing the regulations, therefore, would necessarily prevent constitutional violations. Here, by contrast, there is *no* regulatory standard explaining what constitutes "serious administrative misconduct" that may be investigated under 28 C.F.R. § 0.29c. There is no basis to believe that such investigations will fulfill the core purpose of *Bivens*: to prevent *constitutional* violations.

Second, treating the existence of an inspector general as a basis for foreclosing *Bivens* ignores the history of inspectors general and *Bivens*. The Inspector General Act of 1978 was passed seven years after the Supreme Court decided *Bivens*, and it created inspectors general to oversee numerous different federal agencies' operations. 5 U.S.C. app. 3 § 4. Just two years later, the Supreme Court extended *Bivens* to allow for claims

46

against federal prison officials—employees of DOJ—for alleged deliberate indifference under the Eighth Amendment. *Carlson*, 446 U.S. 14. And despite Congress subsequently amending the Inspector General Act to specifically create the OIG, *see* 5 U.S.C. app. 3 § 2, the Court has reaffirmed that *Bivens* claims may lie against federal prison officials. *Abbasi*, 582 U.S. at 147. This history makes clear: the Supreme Court has not considered the existence of inspectors general a basis to foreclose *Bivens* remedies.

2.   *Deputy Marshals Do Not Represent a New Class of Defendants—Which, in Any Event, Is Not Sufficient to Deny a Bivens Remedy.*

That Logsdon's claim is against deputy marshals is not a special factor warranting dismissal of his *Bivens* claim. First, as discussed *supra* Section II(B)(1), claims against a different federal agency do not constitute a new category of defendants and claims against the officials from the USMS are not new. Rather, both this Court and the Supreme Court had recognized that claims against deputy marshals must be analyzed on their merits, not dismissed for want of a cause of action. *See, e.g.*, *Wilson v. Layne*, 526 U.S. 603 (1999) (analyzing whether deputy marshals were entitled to qualified immunity in a *Bivens* action); *Serrano v. United States*, 766 F. App'x 561 (10th Cir. 2019) (analyzing whether deputy marshals used excessive force in effectuating arrest); *Smith v. Arguello*, 415 F. App'x 57 (10th Cir. 2011) (same); *Trapp v. U.S. Marshals Serv.*, 139 F. App'x 12 (10th Cir. 2005).

Even were there no prior case law recognizing the availability of *Bivens* claims against the USMS, however, the district court's reasoning cannot be reconciled with precedent. A new category of defendants, in the district court's view, is both a new context *and* a special factor—in other words, a new category of *Bivens* claims will *never* be recognized. But that is not the law. Rather, before declining to extend a *Bivens* remedy, the Court must determine whether doing so would "interfere in an intrusive way with sensitive functions of the Executive Branch." *Williams v. Keller*, No. 21-4022, 2021 WL 4486392, at *3 (10th Cir. Oct. 1, 2021). The district court did not engage in this inquiry. Had it done so, it would have reached the only possible conclusion: there is no reason to deny a *Bivens* remedy to "line officers performing routine criminal law enforcement duties." *Hicks*, 64 F.4th 156, 167 (4th Cir. 2023). Thus far, the only identified context that implicates a "sensitive function" of the Executive is national security. *See Egbert*, 142 S. Ct. at 1805 ("[A] *Bivens* cause of action may not lie where, as here, national security is at issue."); *Hernandez*, 140 S. Ct. at 746 ("[T]he conduct of agents positioned at the border has a clear and strong connection to national security . . . ."); *Abbasi*, 582 U.S. at 142 ("The risk of personal damages liability is more likely to cause an official to second-guess difficult but necessary decisions concerning national-security policy.").

## CONCLUSION

For the foregoing reasons, the district court decision should be reversed and the case should be remanded.

Date: May 5, 2023

Respectfully submitted,

*/s/ Kevin E. Jason*
_____

CHRISTOPHER KEMMITT
NAACP LEGAL DEFENSE &
    EDUCATIONAL FUND, INC.
700 14th Street NW, Suite 600
Washington, DC 20005
(202) 682-1300

WIL M. CRAWFORD
INDIAN & ENVIRONMENTAL
    LAW GROUP, PLLC
117 South Ash Street
Ada, OK 74820
(580) 453-7051

JANAI S. NELSON
    *President & Director-Counsel*
KEVIN E. JASON
SAMUEL SPITAL
ASHOK CHANDRAN
NAACP LEGAL DEFENSE &
    EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200
kjason@naacpldf.org

## ORAL ARGUMENT STATEMENT

Plaintiff-Appellant respectfully requests oral argument because this case raises important issues about the enforceability of constitutional rights against federal law enforcement officers. Confusion over the proper application of the Bivens framework as interpreted in recent decisions by this Court and the Supreme Court further warrants argument.

Date: May 5, 2023

*/s/ Kevin E. Jason*
_____
Kevin E. Jason
NAACP Legal Defense &
    Educational Fund, Inc.
40 Rector Street, 5th Floor
New York, NY 10006
kjason@naacpldf.org
(212) 965-2200

*Attorney for Plaintiff-Appellant*

49

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I hereby certify that this document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 12,985 words. This document also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word version 2304 with 14 point Times New Roman font.

Date: May 5, 2023                    */s/ Kevin E. Jason*
                                     Kevin E. Jason
                                     NAACP Legal Defense &
                                        Educational Fund, Inc.
                                     40 Rector Street, 5th Floor
                                     New York, NY 10006
                                     kjason@naacpldf.org
                                     (212) 965-2200

                                     *Attorney for Plaintiff-Appellant*

## CERTIFICATE OF DIGITAL SUBMISSION

Pursuant to Fed. R. App. P. 25, 10th Cir. R. 25.3, and Section II.J of the Court's CM/ECF User Manual, I hereby certify that (1) all required privacy redactions have been made in accordance with Fed. R. App. P. 25(a) and 10th Cir. R. 25.5; (2) any hard copies of this brief required to be submitted shall be exact copies of this electronically filed version, which was submitted to the Clerk of the United States Court of Appeals for the Tenth Circuit using the CM/ECF system; and (3) this brief has been scanned for viruses with the most recent version of the commercial virus scanning program SentinelOne, and no viruses were detected.

Date: May 5, 2023

*/s/ Kevin E. Jason*

Kevin E. Jason
NAACP Legal Defense &
   Educational Fund, Inc.
40 Rector Street, 5th Floor
New York, NY 10006
kjason@naacpldf.org
(212) 965-2200

*Attorney for Plaintiff-Appellant*

51

## CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit using the CM/ECF system, which will also serve counsel for all parties, who are electronically registered CM/ECF users and will be served electronically by the CM/ECF system.

Date: May 5, 2023

/s/ *Kevin E. Jason*

Kevin E. Jason
NAACP Legal Defense &
   Educational Fund, Inc.
40 Rector Street, 5th Floor
New York, NY 10006
kjason@naacpldf.org
(212) 965-2200

*Attorney for Plaintiff-Appellant*

ATTACHMENT A

District Court Order on Defendants' Motion to Dismiss

Filed 10/21/2022

ECF No. 105

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **DONALD RAY LOGSDON, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION** |
| | ) | |
| **v.** | ) | **No. 21-253-KHV** |
| | ) | |
| **UNITED STATES MARSHAL SERVICE, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

Donald Ray Logsdon, Jr. filed suit pro se against the United States Marshal Service (USMS) and three of its officers (Phillip Gilliam, Jere Smith and Cody Vaughn), alleging excessive force during his arrest in March of 2020.   Plaintiff asserts his claim under Bivens v. Six Unknown Agents of Fed. Bur. Of Narcotics, 403 U.S. 388 (1971).   On March 3, 2022, the Court dismissed the USMS.   See Order (Doc. #43).   This matter is before the Court on Defendant Gilliam, Smith, And Vaughn's Motion To Dismiss (Doc. #87) filed July 5, 2022 and plaintiff's Notice (Doc. #93) filed August 18, 2022, which the Court construes as a motion to strike Exhibit A to Defendant Gilliam, Smith, And Vaugh's Motion To Dismiss (Doc. #87).   For reasons stated below, the Court overrules both motions.

## Legal Standards

In ruling on a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement to relief.   Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).   To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible—not merely conceivable—on its face.   Id. at 679–80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555

(2007).   To determine whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense.   Iqbal, 556 U.S. at 679.

The Court need not accept as true those allegations which state only legal conclusions. See id. at 678.   Plaintiff makes a facially plausible claim when he pleads factual content from which the Court can reasonably infer that defendants are liable for the misconduct alleged.   Id. However, plaintiff must show more than a sheer possibility that defendants have acted unlawfully—it is not enough to plead facts that are "merely consistent with" defendants' liability. Id. (quoting Twombly, 550 U.S. at 557).   A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement will not stand.   Id.   Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not "shown"—that the pleader is entitled to relief.   Id. at 679.   The degree of specificity necessary to establish plausibility and fair notice depends on context; what constitutes fair notice under Fed. R. Civ. P. 8(a)(2) depends on the type of case.   Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir. 2008).

The Court construes plaintiff's pro se complaint liberally and holds it to a less stringent standard than formal pleadings drafted by lawyers.   Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).   The Court does not, however, assume the role of advocate for a pro se litigant.   Id. A pro se litigant must "follow the same rules of procedure that govern all other litigants."   Nielsen v. Price, 17 F.3d 1276, 1277 (10th Cir. 1994).

-2-

**Factual Background**

Plaintiff's complaint, as supplemented by the documents subject to judicial notice,[1] alleges as follows:

On March 5, 2020, Deputy U.S. Marshals Gilliam, Smith and Vaughn executed a state court warrant for plaintiff's arrest on a charge of assault with a dangerous weapon. Defendants secretly approached plaintiff after dark while he was working on a generator outside at a friend's house. Without announcing their presence, Gilliam ran up behind plaintiff and kicked him in the face, which left him unconscious. For some two minutes, Gilliam, Smith and Vaughn took turns stomping on plaintiff, who never attempted or even had an opportunity to resist.

On October 14, 2020, plaintiff pled guilty to one count of possession of a firearm and ammunition by a convicted felon. Specifically, plaintiff admitted that on March 5, 2020, he unlawfully possessed a .38 Special caliber revolver and five rounds of ammunition.

Defendants ask the Court to dismiss plaintiff's complaint because (1) Bivens does not provide a remedy for his allegations that Deputy U.S. Marshals used excessive force and (2) they

---

[1]   Generally, when deciding a motion to dismiss under Rule 12(b)(6), the Court may not look beyond the four corners of the complaint. Dean Witter Reynolds, Inc. v. Howsam, 261 F.3d 956, 961 (10th Cir. 2001). One exception to this rule permits the Court to consider facts which are subject to judicial notice. See Fed. R. Evid. 201(b) (judicially noticed fact must be one not subject to reasonable dispute because it is generally known within territorial jurisdiction of trial court or capable of accurate and ready determination from sources whose accuracy cannot reasonably be questioned). Here, at defendants' request, the Court takes judicial notice of several documents from a related criminal proceeding in United States v. Logsdon, E.D. Okla. No. CR-20-29-JFH, including plaintiff's Petition To Enter Plea Of Guilty And Order Entering Plea, the Transcript of Change Of Plea, and the Warrant for plaintiff's arrest, attached as Exhibits A, B and C to Defendant Gilliam, Smith, And Vaughn's Motion To Dismiss (Doc. #87). See Trusdale v. Bell, 85 F. App'x 691, 693 (10th Cir. 2003) (judicial notice of district court records concerning plaintiff's criminal conviction); St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp., 605 F.2d 1169, 1172 (10th Cir. 1979) (federal courts may take notice of proceedings in other courts if proceedings have direct relation to matters at issue).

-3-

are entitled to qualified immunity.

## Analysis

### I.   Availability Of <u>Bivens</u> Remedy

Defendants ask the Court to dismiss plaintiff's complaint because <u>Bivens</u> does not provide a remedy for his allegations that Deputy U.S. Marshals used excessive force.   In <u>Bivens</u>, under general principles of federal jurisdiction, the Supreme Court created a cause of action under the Fourth Amendment against federal agents who allegedly manacled the plaintiff and threatened his family while arresting him for narcotics violations.   <u>Egbert v. Boule</u>, 142 S. Ct. 1793, 1802 (2022) (citing <u>Bivens</u>, 403 U.S. at 397 and <u>Ziglar v. Abbasi</u>, 137 S. Ct. 1843, 1854 (2017).   After <u>Bivens</u> was decided in 1971, the Supreme Court created new causes of action in only two other circumstances: (1) a sex discrimination claim for a former congressional staffer under the Fifth Amendment and (2) an inadequate care claim for a federal prisoner under the Eighth Amendment. <u>Egbert</u>, 142 S. Ct. at 1802 (citations omitted).

To determine whether plaintiff has stated a claim under <u>Bivens</u>, the Court applies a two-step inquiry.   <u>Id.</u> at 1803.   First, the Court determines whether plaintiff's complaint alleges facts which present a "new <u>Bivens</u> context," that is a context "'meaningful[ly]" different from the three cases in which the Supreme Court has implied a damages action.   <u>Id.</u> (quoting <u>Ziglar</u>, 137 S. Ct. at 1859–60).   Examples of how a case might differ in a meaningful way include "the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence

-4-

of potential special factors that previous <u>Bivens</u> cases did not consider."   <u>Ziglar</u>, 137 S. Ct. at 1860.   Second, if plaintiff's claim presents a new context, the Court cannot recognize a <u>Bivens</u> remedy if "special factors" indicate that "the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'"   <u>Egbert</u>, 142 S. Ct. at 1803 (quoting <u>Ziglar</u>, 137 S. Ct. at 1858).

Here, plaintiff alleges that even though he did not know officers were present and had no opportunity to resist, Gilliam ran up behind him and kicked him in the face, and that while he was unconscious, Gilliam, Smith and Vaughn took turns stomping on him for some two minutes. Plaintiff's complaint asserts facts that are not meaningfully different than the circumstances in <u>Bivens</u>.   Both cases involve rank-and-file federal law enforcement officers making arrests.   The constitutional right under the Fourth Amendment to be free from excessive force during an arrest and the legal mandate which governs the officers' conduct are the same in both cases.   <u>See</u> <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989) ("<u>all</u> claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach") (emphasis in original).   The Supreme Court and the Tenth Circuit have provided extensive judicial guidance on how much force officers can use to arrest an individual.   <u>See</u> <u>id.</u> at 395–97; <u>McCoy v. Meyers</u>, 887 F.3d 1034, 1045–47 (10th Cir. 2018); <u>Casey v. City of Fed. Heights</u>, 509 F.3d 1278, 1281–83 (10th Cir. 2007).   Unlike <u>Egbert</u>, which involved national security considerations raised in an excessive force claim against a Border Patrol agent, plaintiff's case presents a garden variety claim that officers employed "unreasonable force . . . in making the arrest."   <u>Bivens</u>, 403 U.S. at 389; <u>see</u>

Egbert, 142 S. Ct. at 1804–06; see also Hernandez v. Mesa, 140 S. Ct. 735, 739 (2020) ("Unlike any previously recognized Bivens claim, a cross-border shooting claim has foreign relations and national security implications."); Ziglar, 137 S. Ct. at 1860 (claims that challenge confinement conditions imposed on illegal aliens under high-level executive policy created in wake of major terrorist attack on American soil present new Bivens context).   Plaintiff's excessive force claim does not go beyond the Bivens context or its "core purpose of deterring individual officers from engaging in unconstitutional wrongdoing."   Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 74 (2001).

Defendants argue that plaintiff's specific allegations of excessive force present a new Bivens context because they arrested plaintiff away from his home and pursuant to a duly-issued warrant.   The remedy that the Supreme Court recognized in Bivens, however, is not limited to the precise allegations that federal agents employed excessive force during a warrantless arrest of an individual in his home.   Instead, Bivens held more broadly that an individual could "recover money damages for *any* injuries he ha[d] suffered as a result of the agents' violation of the [Fourth] Amendment," which necessarily included a remedy for plaintiff's claim of "unreasonable force [that officers] employed in making the arrest."   Bivens, 403 U.S. at 389, 397 (emphasis added). A warrant for an arrest does not give officers carte blanche to employ unreasonable force or otherwise disregard the rights of an individual under the Fourth Amendment.   In sum, defendants have not shown that the existence of an arrest warrant and the fact that officers arrested plaintiff away from his home are potentially special factors that previous Bivens cases did not consider.[2]

---

[2]   In an unpublished decision, the Tenth Circuit addressed whether Deputy U.S. Marshals were entitled to qualified immunity on plaintiff's excessive force claim brought under

(continued . . .)

-6-

Ziglar, 137 S. Ct. at 1860; see Bueno Diaz v. Mercurio, 442 F. Supp. 3d 701, 709 (S.D.N.Y. 2020) (Bivens includes garden variety excessive force cases; location of arrest and existence of warrant are not special factors that Bivens did not consider); Lehal v. Cent. Falls Det. Facility Corp., No. 13CV3923 (DF), 2019 WL 1447261, at *12 (S.D.N.Y. Mar. 15, 2019) (excessive force claim against Deputy U.S. Marshals did not present new Bivens context; location of arrest and existence of warrant are not potential special factors that Bivens did not consider).[3]

Because plaintiff has alleged facts which support an excessive force claim that is not meaningfully different than Bivens, the Court need not assess whether special factors establish that the Judiciary is less equipped than Congress to weigh the costs and benefits of allowing this damages action to proceed.   Cf. Bueno Diaz, 442 F. Supp. 3d at 710–12 (even if excessive force claim arose in new Bivens context, no special factors would counsel hesitation in recognizing

---

[2](. . . continued)
Bivens.   See Serrano v. United States, 766 F. App'x 561, 565–70 (10th Cir. 2019).   In doing so, the Tenth Circuit did not question—and therefore apparently assumed—that Bivens provided a cause of action to an arrestee who alleged that while executing an arrest warrant, officers used excessive force.   Indeed, as to plaintiff's claim that one officer failed to intervene to prevent other officers from using excessive force, the Tenth Circuit held that because such a claim is viable under Section 1983, plaintiff could also pursue such a claim under Bivens.   766 F. App'x at 570.

[3]      Defendants also argue that plaintiff's allegations present a new Bivens context because during the arrest, they found a loaded firearm in his possession.   To establish this fact, defendants rely on plaintiff's guilty plea in his criminal case, which is subject to judicial notice. Plaintiff's plea establishes, however, only that at some time on the day of March 5, 2020, he possessed a firearm and ammunition—it did not address whether officers discovered the firearm and ammunition when they arrested him that day or whether the ammunition was loaded in the firearm.   See Petition To Enter Plea Of Guilty And Order Entering Plea at 2; Transcript Of Change Of Plea at 24–25.   On a summary judgment motion, the Court could potentially make such factual inferences—if not rebutted by plaintiff—but it will not do so for purposes of determining what facts are subject to judicial notice on a motion to dismiss.   In any event, even if officers ultimately discover that an arrestee has a loaded weapon, that fact does not necessarily excuse the use of a particular level of force, especially here where plaintiff alleges that he did not resist and the record does not suggest that officers knew that he had a weapon before they employed force.

-7-

Bivens remedy).   The Court therefore overrules defendants' argument that plaintiff cannot state a claim under Bivens.

## II.      Qualified Immunity

Defendants assert that even if plaintiff has stated a plausible claim under Bivens, they are entitled to qualified immunity.   Smith and Vaughn assert that they are entitled to qualified immunity because plaintiff has not alleged their "direct and personal participation in an alleged Fourth Amendment violation."   Defendant Gilliam, Smith, And Vaugh's Motion To Dismiss (Doc. #87) at 14.   Gilliam argues that he is entitled to qualified immunity because plaintiff has not alleged an underlying constitutional violation of a clearly established right.   Id. at 15.

In deciding a motion to dismiss based on qualified immunity, the Court considers whether plaintiff has alleged facts which establish a violation of a constitutional right and whether at the time of the alleged misconduct, the right at issue was clearly established.   See Leverington v. City of Colo. Springs, 643 F.3d 719, 732 (10th Cir. 2011).   Whether a right is "clearly established" is an objective test.   A constitutional right is clearly established when it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right."   Est. of Ceballos v. Husk, 919 F.3d 1204, 1215 (10th Cir. 2019) (citations omitted).   The Supreme Court has warned against defining a clearly established right "at a high level of generality" and that the law must be "particularized to the facts of the case," but this does not mean that a right is only clearly established if a case exists that is factually identical.   Id. (citations omitted).   In other words, the "clearly established" prong does not require plaintiff to show that "the very act in question previously was held unlawful."   Weigel v. Broad, 544 F.3d 1143, 1153 (10th Cir. 2008) (citations omitted).   This makes good sense: if a right is clearly established only when a prior case

-8-

presents identical facts, qualified immunity would apply under every different fact pattern.   Under this standard, officials would always be entitled to qualified immunity so long as their actions— no matter how outrageous or harmful—were sufficiently novel.   The Tenth Circuit has therefore explained that the "more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." Fogarty v. Gallegos, 523 F.3d 1147, 1161 (10th Cir. 2008); see Duran v. Sirgedas, 240 F. App'x 104, 127 (7th Cir.), vacated in part on reh'g (July 17, 2007) (citations omitted) ("It would create perverse incentives indeed if a qualified immunity defense could succeed against those types of claims that have not previously arisen because the behavior alleged is so egregious that no like case is on the books.").

A.   Constitutional Violation

The use of excessive force implicates a person's Fourth Amendment right to be free from unreasonable seizure.   See Graham, 490 U.S. at 394.   The Court evaluates whether the amount of force that an officer used was "objectively reasonable" in light of the facts and circumstances confronting the officer, without regard to his underlying intent or motivation.   Id. at 397.   Such circumstances include (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, (3) whether the suspect is actively resisting arrest or attempting to flee, (4) whether the officers ordered the suspect to drop any weapons and the suspect's response to any such commands, (5) whether the suspect made any hostile motions with a weapon towards the officers, (6) the distance between the officers and the suspect and (7) the manifest intentions of the suspect.   Id. at 396 (identifying factors (1) through (3)); Est. of Larsen ex rel. Sturdivan v. Murr, 511 F.3d 1255, 1260 (10th Cir. 2008) (identifying factors (4)

-9-

through (7)).   Reasonableness must be determined from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."   Graham, 490 U.S. at 396.

As noted above, plaintiff alleges that (1) he had no opportunity to resist because he did not know officers were present, (2) Gilliam ran up behind him and kicked him in the face, which caused him to lose consciousness and (3) while he was unconscious, Gilliam, Smith and Vaughn took turns stomping on him for some two minutes.   Plaintiff's complaint admittedly is brief, but it includes enough well-pleaded facts to permit the Court to infer that all three defendants used force that was not objectively reasonable under the Fourth Amendment.   See Iqbal, 556 U.S. at 678–79.

B.     Clearly Established Law

Because excessive force cases require the Court to conduct an all-things-considered inquiry with "careful attention to the facts and circumstances of each particular case," a previously published opinion rarely will involve the exact same factual circumstances.   Casey, 509 F.3d at 1284 (quoting Graham, 490 U.S. at 396).

Accepting plaintiff's version of the facts in the complaint and based on the state of the law on March 5, 2020, reasonable officers would have been aware that the alleged level of force they used was not objectively reasonable.   Plaintiff alleges that Gilliam knocked him unconscious without his knowledge that officers were even present, so he had no opportunity to resist.   After Gilliam's kick left plaintiff unconscious, all three officers took turns stomping on him.   Despite the fact that officers were executing an arrest warrant for a charge of assault with a dangerous weapon, a reasonable officer would have understood that this "obviously egregious" conduct (both the initial disabling kick without asking plaintiff to surrender and the stomping of plaintiff when

-10-

he was unconscious) was not objectively reasonable.   Fogarty, 523 F.3d at 1161; see Graham, 490 U.S. at 396; see also Wilkins v. City of Tulsa, Okla., 33 F.4th 1265, 1277 (10th Cir. 2022) (pre-2017 precedent clearly established that force against subdued suspect who does not pose threat violates Fourth Amendment); McCoy v. Meyers, 887 F.3d 1034, 1052 (10th Cir. 2018) (obvious to officer that continuing to use force on unconscious, handcuffed and zip-tied arrestee was excessive); Casey, 509 F.3d at 1284 (when officer's violation of Fourth Amendment is clear from Graham itself, a second decision with greater specificity is not required to clearly establish the law).

Because plaintiff has alleged the violation of his clearly established right to be free from the use of excessive force in effecting an arrest, defendants are not entitled to qualified immunity. The Court therefore overrules defendants' motion to dismiss on that ground.

**IT IS THEREFORE ORDERED** that Defendant Gilliam, Smith, And Vaugh's Motion To Dismiss (Doc. #87) filed July 5, 2022 is **OVERRULED**.

**IT IS FURTHER ORDERED** that plaintiff's Notice (Doc. #93) filed August 18, 2022, which the Court construes as a motion to strike Exhibit A to Defendant Gilliam, Smith, And Vaugh's Motion To Dismiss (Doc. #87) is **OVERRULED as moot**.

Dated this 21st day of October, 2022 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

-11-

ATTACHMENT B

District Court Order on Defendants' Motion for Reconsideration of Order

Filed 01/13/2023

ECF No. 123

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **DONALD RAY LOGSDON, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION** |
| | ) | |
| **v.** | ) | **No. 21-253-KHV** |
| | ) | |
| **UNITED STATES MARSHAL SERVICE, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

Donald Ray Logsdon, Jr. filed suit pro se against the United States Marshals Service ("USMS") and three of its officers (Phillip Gilliam, Jere Smith and Cody Vaughn), alleging excessive force during his arrest in March of 2020.   On March 3, 2022, the Court dismissed the USMS.   See Order (Doc. #43).   On October 21, 2022, the Court overruled Defendant Gilliam, Smith, And Vaughn's Motion To Dismiss (Doc. #87) filed July 5, 2022.   See Memorandum And Order (Doc. #105).   This matter is before the Court on Defendant Gilliam, Smith, And Vaughn's Motion For Reconsideration Of Order (Doc. #105) (Doc. #112) filed November 17, 2022.   For reasons stated below, the Court sustains defendants' motion and dismisses this case for failure to state a claim on which relief can be granted.

## Legal Standards

The Court has discretion to reconsider a decision if the moving party can establish (1) an intervening change in the controlling law; (2) the availability of new evidence that could not have been obtained previously through the exercise of due diligence; or (3) the need to correct clear error or prevent manifest injustice.   Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000).   Such motions are not appropriate to ask the Court to revisit issues already addressed or to

hear new arguments or supporting facts that could have been presented originally.   See Matosantos Commercial Corp. v. Applebee's Int'l, Inc., 245 F.3d 1203, 1209 n.2 (10th Cir. 2001). Reconsideration may be appropriate, however, if the Court has misapprehended the facts, a party's position or the controlling law.   See Servants of Paraclete, 204 F.3d at 1012.

In ruling on a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement to relief.   Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).   To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible—not merely conceivable—on its face.   Id. at 679–80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).   To determine whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense.   Iqbal, 556 U.S. at 679.

The Court need not accept as true those allegations which state only legal conclusions. See id. at 678.   Plaintiff makes a facially plausible claim when he pleads factual content from which the Court can reasonably infer that defendants are liable for the misconduct alleged.   Id. However, plaintiff must show more than a sheer possibility that defendants have acted unlawfully—it is not enough to plead facts that are "merely consistent with" defendants' liability. Id. (quoting Twombly, 550 U.S. at 557).   A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement will not stand.   Id.   Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not "shown"—that the pleader is entitled to relief.   Id. at 679.   The degree of specificity necessary to establish plausibility and fair notice depends on context; what constitutes fair notice

-2-

under Fed. R. Civ. P. 8(a)(2) depends on the type of case.  Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir. 2008).

The Court construes plaintiff's pro se complaint liberally and holds it to a less stringent standard than formal pleadings drafted by lawyers.  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).   The Court does not, however, assume the role of advocate for a pro se litigant.  Id. A pro se litigant must "follow the same rules of procedure that govern all other litigants."  Nielsen v. Price, 17 F.3d 1276, 1277 (10th Cir. 1994).

### Factual Background

As noted in the Court's Memorandum And Order (Doc. #105), plaintiff's complaint, as supplemented by documents subject to judicial notice, alleges as follows:

On March 5, 2020, Deputy U.S. Marshals Gilliam, Smith and Vaughn executed a state court warrant for plaintiff's arrest on a charge of assault with a dangerous weapon.[1]   Defendants secretly approached plaintiff after dark while he was working on a generator outside a friend's house.   Without announcing their presence, Gilliam ran up behind plaintiff and kicked him in the face, which left him unconscious.   For some two minutes, Gilliam, Smith and Vaughn took turns stomping on plaintiff, who never attempted or even had an opportunity to resist.

On October 14, 2020, plaintiff pled guilty to one count of possession of a firearm and ammunition by a convicted felon.   Specifically, plaintiff admitted that on March 5, 2020, he unlawfully possessed a .38 Special caliber revolver and five rounds of ammunition.

Plaintiff filed suit pro se against the USMS, Gilliam, Smith and Vaughn alleging excessive

---

[1]     Plaintiff's complaint refers to Gilliam, Smith and Vaughn as "United States Marshals," Complaint For A Civil Case (Doc. #1) filed August 25, 2021 at 5–6, but he does not dispute that each of them were either Deputy or Special Deputy U.S. Marshals.

-3-

force during his arrest.   Plaintiff asserts his claim under <u>Bivens v. Six Unknown Agents of Fed. Bur. Of Narcotics</u>, 403 U.S. 388 (1971).   On March 3, 2022, the Court dismissed the USMS.   On October 21, 2022, the Court overruled <u>Defendant Gilliam, Smith, And Vaughn's Motion To Dismiss</u> (Doc. #87) filed July 5, 2022.   See <u>Memorandum And Order</u> (Doc. #105).

<u>**Analysis**</u>

Defendants ask the Court to reconsider the order which overruled their motion to dismiss. Specifically, defendants ask the Court to reconsider whether the allegations in plaintiff's complaint present a new <u>Bivens</u> context and whether special factors counsel against the judicial creation of a <u>Bivens</u> remedy in this case.

In <u>Bivens</u>, under general principles of federal jurisdiction, the Supreme Court created a cause of action under the Fourth Amendment against federal agents who allegedly entered plaintiff's home, manacled him and threatened his family while arresting him for narcotics violations.   <u>Egbert v. Boule</u>, 142 S. Ct. 1793, 1802 (2022) (citing <u>Bivens</u>, 403 U.S. at 397 and <u>Ziglar v. Abbasi</u>, 137 S. Ct. 1843, 1854 (2017)).   Since <u>Bivens</u> was decided in 1971, the Supreme Court has created new causes of action in only two other circumstances: (1) a sex discrimination claim for a former congressional staffer under the Fifth Amendment and (2) an inadequate care claim for a federal prisoner under the Eighth Amendment.   <u>Egbert</u>, 142 S. Ct. at 1802 (citations omitted).

As explained in the Court's <u>Memorandum And Order</u> (Doc. #105), to determine whether plaintiff has stated a claim under <u>Bivens</u>, the Court applies a two-step inquiry.   <u>Id.</u> at 1803.   First, the Court determines whether plaintiff's complaint alleges facts which present a "new <u>Bivens</u> context," <u>i.e.</u> a context "'meaningful[ly]" different from the three cases in which the Supreme

-4-

Court has implied a damages action.  Id. (quoting Ziglar, 137 S. Ct. at 1859–60).  Examples of

how a case might differ in a meaningful way include "the rank of the officers involved; the

constitutional right at issue; the generality or specificity of the official action; the extent of judicial

guidance as to how an officer should respond to the problem or emergency to be confronted; the

statutory or other legal mandate under which the officer was operating; the risk of disruptive

intrusion by the Judiciary into the functioning of other branches; or the presence of potential

special factors that previous Bivens cases did not consider."  Ziglar, 137 S. Ct. at 1860.  Second,

if plaintiff's claim presents a new context, the Court cannot recognize a Bivens remedy if "special

factors" indicate that "the Judiciary is at least arguably less equipped than Congress to 'weigh the

costs and benefits of allowing a damages action to proceed.'"  Egbert, 142 S. Ct. at 1803 (quoting

Ziglar, 137 S. Ct. at 1858).  The Supreme Court recently noted that the two steps often resolve to

a single question: "whether there is any reason to think that Congress might be better equipped to

create a damages remedy."  Id.  If a court finds "even a single reason to pause before applying

Bivens in a new context," it should not recognize a Bivens remedy.  Id. (quotation marks and

citations omitted).

Here, plaintiff alleges that even though he did not know officers were present and had no

opportunity to resist, Gilliam ran up behind him and kicked him in the face, and that while he was

unconscious, Gilliam, Smith and Vaughn took turns stomping on him for some two minutes.  The

Court previously found that plaintiff's complaint asserts facts that are not meaningfully different

than the circumstances in Bivens because (1) both cases involve rank-and-file federal law

enforcement officers making arrests, (2) the constitutional right under the Fourth Amendment to

be free from excessive force during an arrest and the legal mandate which governs the officers'

-5-

conduct are the same, (3) the Supreme Court and the Tenth Circuit have provided extensive judicial guidance on how much force officers can use to arrest an individual and (4) unlike Egbert, which involved national security considerations raised in an excessive force claim against a Border Patrol agent, plaintiff's case presents a garden variety claim that officers employed "unreasonable force . . . in making the arrest."   Memorandum And Order (Doc. #105) at 5 (quoting Bivens, 403 U.S. at 389).

Shortly after the Court ruled on defendants' motion to dismiss, the Ninth Circuit decided Mejia v. Miller, 53 F.4th 501 (9th Cir. Nov. 14, 2022).   There, Denise Mejia alleged that a Bureau of Land Management ("BLM") officer used excessive force when he shot her in an attempt to stop and arrest her.   53 F.4th at 503.   The Ninth Circuit held that Mejia's complaint presented a new Bivens context because (1) the officer was employed by a different federal agency than the officer in Bivens (the BLM rather than the Bureau of Narcotics) and (2) unlike Bivens where the unreasonable government intrusion occurred in plaintiff's home, the BLM officer attempted to arrest Mejia on public lands.   53 F.4th at 506.   The Ninth Circuit also concluded that special factors counseled against implying a new Bivens cause of action because (1) permitting excessive force claims against BLM officers would have "systemwide consequences" for BLM's mandate to maintain order on public lands and (2) Mejia had alternative remedies including administrative remedies with the BLM and potential claims under the Federal Tort Claims Act ("FTCA").   Id.

On reconsideration of defendants' motion to dismiss, the Court now concludes that defendants' motion should be sustained because plaintiff's allegations present a new Bivens context and no Bivens remedy should be implied.   Plaintiff's allegations and Bivens both include allegations that officers employed "unreasonable force . . . in making the arrest."   Bivens, 403

-6-

U.S. at 397.   And, as explained in the prior order, the same general legal principles which prohibit excessive force during an arrest apply in a variety of contexts.   Even so, plaintiff's allegations are materially different from <u>Bivens</u> in several important aspects.   Most critically, officers arrested plaintiff outside a friend's house, unlike the unreasonable officer intrusion and arrest inside plaintiff's home in <u>Bivens</u>.   See <u>Mejia</u>, 53 F.4th at 506 (new <u>Bivens</u> context because events took place on public lands where plaintiff had no expectation of privacy, not in her home); <u>Young v. City of Council Bluffs, Ia.</u>, 569 F. Supp. 3d 885, 893–94 (S.D. Iowa 2021) (new context because officers arrested plaintiff outside his home).   Next, unlike the warrantless arrest in <u>Bivens</u>, the officers here had an arrest warrant for plaintiff.   See <u>Cienciva v. Brozowski</u>, No. 3:20-cv-2045, 2022 WL 2791752, at *9 (M.D. Pa. July 15, 2022) (new context because officers had arrest warrant); <u>Young</u>, 569 F. Supp. 2d at 893–94 (same).   Finally, the officers here were employed by the U.S. Marshals Service, not the Bureau of Narcotics (or its successor agency, the Drug Enforcement Administration) involved in <u>Bivens</u>.   See <u>Egbert</u>, 142 S. Ct. at 1803 (case with new category of defendants is new <u>Bivens</u> context because it presents potential special factors); <u>see also</u> <u>Mejia</u>, 53 F.4th at 506 (new context because BLM officers new category of defendants); <u>Lewis v. Westfield</u>, No. 16-cv-1057-RPKTAM, 2022 WL 16924177, at *3 (E.D.N.Y. Nov. 14, 2022) (excessive force claims present new context because defendants are Deputy Marshals, not federal narcotics agents); <u>Senatus v. Lopez</u>, No. 20-CV-60818, 2022 WL 16964153, at *5 (S.D. Fla. Oct. 12, 2022) (claims against deputized U.S. Marshals are extension of <u>Bivens</u> into "new context"), <u>report and recommendation adopted</u>, 2022 WL 16961323 (S.D. Fla. Nov. 16, 2022).

Because plaintiff has alleged facts in a different context than <u>Bivens</u>, the Court assesses whether special factors counsel against allowing this damage action to proceed.   <u>Egbert</u>, 142 S.

Ct. at 1803.   Here, two special factors counsel against permitting plaintiff's <u>Bivens</u> action to proceed.   First, courts are "not undoubtedly better positioned than Congress to create a damages action" for claims against a new category of defendants such as Deputy U.S. Marshals.   <u>Id.</u> (cases that involve new category of defendants "represent situations in which a court is not undoubtedly better positioned than Congress to create a damages action").   "In all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts."   <u>Id.</u> at 1800; <u>see id.</u> at 1810 (Gorsuch, J., concurring in the judgment) (if "only question is whether a court is 'better equipped' than Congress to weigh the value of a new cause of action, surely the right answer will always be no.").   Second, for a claim that a Deputy U.S. Marshal engaged in wrongful conduct, an aggrieved individual has several alternative remedies including an administrative grievance, the FTCA or Section 3724 of Title 31.[2]   Because such alternative remedial structures

---

[2]      <u>See</u> FTCA, 28 U.S.C. § 2679(b)(1) (suit against United States exclusive remedy for injury resulting from negligent or wrongful conduct of government employee while acting within scope of office or employment); 31 U.S.C. § 3724(a) (if claim may not be settled under FTCA, Attorney General may settle claim for up to $50,000 for personal injury, death or property damage by federal investigative or law enforcement officer).

Individuals who assert that USMS personnel engaged in misconduct may file an administrative grievance online with the USMS or through the mail with the Office of General Counsel for the USMS.   <u>See</u> Complaint Regarding USMS Personnel or Programs, https://www.usmarshals.gov/forms/complaint-form.pdf (last visited Jan. 5, 2023); Instructions For Submitting An Administrative Tort Claim With The United States Marshals Service, https://www.usmarshals.gov/resources/publications/instructions-submitting-administrative-tort-claim-us-marshals-service (last visited Jan. 5, 2023).   In turn, the Director of USMS shall investigate any "alleged improper conduct" of USMS personnel.   28 C.F.R. § 0.111(n).

Individuals also can report misconduct related to a USMS employee to the Department of Justice's Office of the Inspector General (OIG)."   https://www.usmarshals.gov/report-fraud-waste-and-abuse (last visited Jan. 5, 2023); <u>see also</u> Complaint to DOJ Office of Inspector General, https://oig.justice.gov/hotline/submit_complaint.   In turn, the Attorney General (through the Department of Justice's OIG) has authority to investigate any alleged misconduct.   <u>See</u> 28 C.F.R. § 0.5(a) (Attorney General shall supervise and direct administration and operation of DOJ, including offices of U.S. Marshals, which are within DOJ); Report to Congress on Implementation (continued. . .)

exist, "that alone, like any special factor, is reason enough to limit the power of the Judiciary to

infer a new <u>Bivens</u> cause of action." <u>Egbert</u>, 142 S. Ct. at 1804 (quotations and citations omitted);

<u>see</u> <u>Silva v. United States</u>, 45 F.4th 1134, 1141 (10th Cir. 2022) (because <u>Bivens</u> "is concerned

solely with deterring the unconstitutional acts of individual officers," availability of BOP

Administrative Remedy Program forecloses prisoner's <u>Bivens</u> claim for excessive force) (quoting

<u>Egbert</u>, 142 S. Ct. at 1806).

Plaintiff argues that the Court should allow his <u>Bivens</u> claim to proceed because he is in

prison and has no way to access the online forms to file an administrative complaint. Plaintiff

does not explain, however, why he could not have requested such forms—and sent them back to

the USMS or the Department of Justice's OIG—through the U.S. mail system. In addition,

plaintiff's alleged lack of access to the internet or to certain standard forms did not preclude him

from asserting an FTCA claim. To initiate an FTCA claim, plaintiff needed to simply present his

claim to the appropriate federal agency by submitting "(1) a written statement sufficiently

describing the injury to enable the agency to begin its own investigation, and (2) a sum certain

damages claim." <u>Est. of Trentadue ex rel. Aguilar v. United States</u>, 397 F.3d 840, 852 (10th Cir.

2005) (quotation marks and citation omitted).[3] Plaintiff could have accomplished this

---

[2](. . . continued)
of Section 1001 of the USA PATRIOT Act, No. 22-102 (Sept. 2022), https://oig.justice.gov/sites/
default/files/reports/22-102.pdf (last visited Jan. 5, 2023) (OIG may "investigate allegations of
criminal wrongdoing or administrative misconduct" by DOJ employee or refer such allegations to
agency internal affairs office).

[3]     <u>See also</u> 28 U.S.C. § 2675(a) (to file action against United States for money
damages for injury caused by negligence or wrongful conduct of government employee, claimant
must first present "claim to the appropriate Federal agency"); <u>Staggs v. United States</u>, 425 F.3d
881, 884 (10th Cir. 2005) (claim properly presented if language of claim serves due notice that
agency should investigate possibility of potentially tortious conduct).

prerequisite under the FTCA without a computer or a specific form.   See https://www.justice.gov/civil/documents-and-forms-0 (last visited Jan. 5, 2023) ("Standard Form 95 is not required to present a claim under the FTCA, but it is a convenient format for supplying the information necessary to bring an FTCA claim.").   Even if plaintiff had somewhat limited access to the alternative remedial structures for administrative or FTCA claims because of his imprisonment, and even if the alternative remedies do not provide complete relief, the fact that such alternative remedial structures exist is sufficient to "limit the power of the Judiciary to infer a new Bivens cause of action." Egbert, 142 S. Ct. at 1804 (quoting Ziglar, 137 S. Ct. at 1858).

In sum, because courts are not undoubtedly better positioned than Congress to create a damages action against Deputy U.S. Marshals and plaintiff has alternative remedies, the Court declines to infer and create a new Bivens cause of action in this case.   The Court therefore sustains defendants' motion to reconsider and dismisses plaintiff's complaint against the individual defendants for failure to state a claim on which relief can be granted.

**IT IS THEREFORE ORDERED** that Defendant Gilliam, Smith, And Vaughn's Motion For Reconsideration Of Order (Doc. #105) (Doc. #112) filed November 17, 2022 is **SUSTAINED**. The Court dismisses plaintiff's Complaint For A Civil Case (Doc. #1) filed August 25, 2021 against the individual defendants for failure to state a claim on which relief can be granted. Because the Court previously dismissed the United States Marshals Service, see Order (Doc. #43) filed March 3, 2022, the Clerk is directed to enter judgment in favor of defendants.

Dated this 13th day of January, 2023 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

-10-

ATTACHMENT C

District Court Judgment

Filed 01/13/2023

ECF No. 124

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **DONALD RAY LOGSDON JR.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. CIV-21-253-KHV-TJJ** |
| ) | |
| **UNITED STATES MARSHAL SERVICE,** ) | |
| **et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## <u>JUDGMENT</u>

In accordance with the Order (Doc. 123) entered this 13th day of January 2023, along with Order (Doc. 43) filed on March 3, 2022, it is ORDERED, ADJUDGED and DECREED that this case is dismissed.

**IT IS SO ORDERED** this 13th day of January 2023.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
UNITED STATES DISTRICT JUDGE