

**U.S. Department of Justice**

Civil Division, Appellate Staff, Room 7541
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530

---

Edward Himmelfarb  
Attorney

Tel: (202) 514-3547  
Fax: (202) 307-2551

BY ECF

August 14, 2023

Mr. Christopher M. Wolpert  
Clerk, United States Court of Appeals  
 for the Tenth Circuit  
Byron White United States Courthouse  
1823 Stout Street, First Floor  
Denver, CO  80257

    Re:    Logsdon v. United States Marshals Service, et al., No. 23-7008

Dear Mr. Wolpert:

    Pursuant to Rule 28(j) of the Federal Rules of Appellate Procedure, the appellees bring the Court's attention to the following supplemental authority:  Cain v. Rinehart, No. 22-1893 (6th Cir. July 25, 2023) (unpublished), a copy of which is attached here.

    In Cain, members of a United States Marshals Service task force attempted to enforce an arrest warrant on a person they thought was residing at Cain's address.  The plaintiff alleged that Rinehart and other (unnamed) members of the Marshals Service task force used excessive force when they arrested him.  Analyzing whether a Bivens remedy was available under the Fourth Amendment, the Sixth Circuit concluded that this case presented a new context for two reasons: first, it was meaningfully different from Bivens in that the task force officers were attempting to enforce an arrest warrant, which gave them some authority to enter the home, slip op. 6-7, and second, the task force members were from a different law-enforcement agency, the U.S. Marshals Service, slip op. 7.  This analysis supports the argument at pages 14-26 of the Brief for the Appellees.

    Next, the Sixth Circuit held that special factors foreclosed extension of the Bivens remedy in these circumstances.  First, the court concluded that allowing a Bivens claim "could impair the government's recruitment of officers to participate in those task forces and could negatively affect task members' performance of their duties."  Slip op. 7.  This supports the argument at pages 34-37 of the Appellees' Brief.  Second, the court noted that despite legislation regarding these task forces and broad congressional oversight of the Marshals Service, Congress has never created a

damages remedy for constitutional violations by such task forces. Slip op. 7-8. This supports the argument at pages 18-19 of the Appellees' Brief. Third, the court held that internal grievance procedures and the authority to settle claims under 31 U.S.C. 3724 are alternative processes that Congress and the Executive view as adequately deterring violations. Slip op. 8. This supports the argument at pages 26-32 of the Appellees' Brief.

    Thank you for your attention to this matter.

                                        Sincerely yours,

                                        /s/   Edward Himmelfarb

                                        Edward Himmelfarb
                                        Attorney for the Appellees

Note: The body of this letter contains fewer than 350 words.

cc (by ECF):   All counsel

<u>**NOT RECOMMENDED FOR PUBLICATION**</u>

No. 22-1893

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

> FILED
> Jul 25, 2023
> DEBORAH S. HUNT, Clerk

| | |
|---|---|
| DERRICK D. CAIN,<br><br>    Plaintiff-Appellant,<br><br>v.<br><br>BRIAN RINEHART, U.S. Marshal; JOHN DOE, Unknown U.S. Marshals Task Force Officers of the Detroit Fugitive Apprehension Team,<br><br>    Defendants-Appellees. | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |

O R D E R

Before: COLE, McKEAGUE, and NALBANDIAN, Circuit Judges.

Derrick D. Cain, proceeding pro se, appeals the district court's judgment in favor of defendant Brian Rinehart in his civil rights action seeking damages. This case has been referred to a panel of the court that, upon examination, unanimously agrees that oral argument is not needed. *See* Fed. R. App. P. 34(a). Because Cain does not have a cause of action against Rinehart under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), we affirm.

Cain's claims against Rinehart, a Wayne County Sheriff's officer, arose out of an attempt to execute a warrant for the arrest of Cain's nephew, Corey Mathis, at Cain's home. In February 2016, Mathis violated his probation, and a state court issued a warrant for his arrest. At the time, Rinehart had been temporarily deputized as a member of a U.S. Marshals fugitive-apprehension task force. In April or May of 2016, the task force initiated efforts to execute the arrest warrant. As part of that effort, Rinehart searched several databases to determine Mathis's address. These databases showed that Mathis's address was 12016 Glastonbury, Detroit, Michigan.

In May of 2016, Rinehart and other members of the task force arrived at 12016 Glastonbury during the morning hours, expecting Mathis to be home given his lack of employment history. When they knocked on the door, task-force members encountered Cain, who told them that he was Mathis's uncle and that Mathis did not live there. According to Cain, he refused to consent to a search of his home, went back inside, and closed the door. He alleged that the officers then threatened to take him to jail, threatened to tear his door down, and "rushed" at him with their weapons drawn. Believing that he might be shot, Cain put his hands up and was then assaulted, taken to the ground by Rinehart and other officers, and handcuffed. While other officers searched the home, Rinehart remained with Cain on the porch and held him by the arm. The officers did not find Mathis in Cain's home.

Citing 42 U.S.C. § 1983, Cain asserted that the defendants violated his Fourth Amendment right "to be safe and secure in his home" when they "forcefully entered [his] home" without a search warrant and without probable cause to believe Mathis was inside the home. He also raised state-law claims of assault and battery, false imprisonment, false arrest, and intentional infliction of emotional distress. Cain sought "[m]onetary, compensatory, and punitive damages[] in the amount of $20,000.00, and any other relief the court finds just."

Rinehart moved for summary judgment, addressing only Cain's Fourth Amendment claims. A magistrate judge recommended that Rinehart's motion be denied, finding that there were genuine disputes of material fact that precluded summary judgment on Cain's Fourth Amendment claims and Rinehart's claim of qualified immunity.[1] The district court sustained Rinehart's objections to the report and recommendation and granted summary judgment on Cain's Fourth Amendment unlawful entry claim, holding that Rinehart was entitled to qualified immunity.

---

[1] Rinehart moved for summary judgment on and the magistrate judge addressed three distinct claims under the Fourth Amendment: (1) unlawful entry, (2) unlawful seizure, and (3) excessive force. But Cain's complaint limited his Fourth Amendment claim to the assertion that Rinehart and his team unlawfully entered his home. To the extent he raised claims arising out of his seizure and the amount of force used, he only did so under state law.

Because Rinehart did not address Cain's state-law tort claims in his summary-judgment motion, the court granted Rinehart leave to file a second summary-judgment motion as to those claims.

Rinehart moved for summary judgment on the state-law claims. Rather than respond to that motion, Cain filed a motion for relief from judgment, asking the court to decline supplemental jurisdiction over his state-law claims. The court denied Cain's motion. Cain later moved for voluntary dismissal of his state-law claims. The magistrate judge recommended that Cain's motion for voluntary dismissal be denied and that Rinehart be granted summary judgment on Cain's state-law claims. Cain filed no objections. The district court adopted the report and recommendation, denied Cain's motion for voluntary dismissal, and granted Rinehart summary judgment on the state-law claims.

Cain now appeals the district court's decision to grant summary judgment to Rinehart on his Fourth Amendment claim. In response, the government argues that the district court correctly held that Rinehart was entitled to qualified immunity. However, it urges this court to affirm the district court's judgment on the alternative ground that Cain did not have a cause of action against Rinehart under *Bivens*.

We review the district court's grant of summary judgment de novo, *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003), and "may affirm on any grounds supported by the record even if different from the reasons of the district court," *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 629 (6th Cir. 2002). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Cain brought his Fourth Amendment claim under § 1983, and he maintains on appeal that his claim is properly brought under that statute. But § 1983 applies only to officials "acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Here, the record establishes that Rinehart was acting under color of *federal* law.

Although employed by the Wayne County Sheriff's Office, Rinehart had been temporarily deputized to participate in a U.S. Marshals Task Force. Indeed, in his complaint, Cain identified

Rinehart as a U.S. Marshal. Pursuant to 28 U.S.C. §§ 2671 and 2679, the United States Attorney certified that, when Rinehart attempted to execute the arrest warrant for Mathis at Cain's home and at all relevant times, he was acting on behalf of and under the control of the United States Marshals Service Detroit Fugitive Apprehension Team and within the scope of his employment as a special deputy of the U.S. Marshals Service. Although this certification was submitted in support of the government's argument that Rinehart was immune from liability for Cain's state law claims under the Westfall Act and not to show federal action for *Bivens* purposes, Cain did not dispute that Rinehart's actions were taken in the course of his official duties as a federal employee.

Cain now argues that his cause of action arises under *Bivens and* § 1983 because Rinehart was executing an arrest warrant that had been issued under state law. But in *King v. United States*, 917 F.3d 409, 433–34 (6th Cir. 2019), *rev'd sub nom. on other grounds by Brownback v. King*, 141 S. Ct. 740 (2021), we rejected this as a basis for finding state action. In holding that a local detective who had been working full time with an FBI task force during the apprehension of a state fugitive was acting as a federal agent, we explained that "the nature and character of a cooperative federal-state program is determined by the source and implementation of authority for the *program*, not for the particular work that the agency chooses, in the exercise of its authority, to perform on a given day." *Id.* at 433. Here, the source and implementation of authority for the task force that attempted to execute the arrest warrant for Mathis at Cain's home was the U.S. Marshal Service. Thus, because Rinehart was not acting under color of state law at that time, § 1983 does not apply, and Cain's constitutional claim could be brought only under *Bivens. Cf. Petty v. United States*, 80 F. App'x 986, 987, 989 (6th Cir. 2003) (noting that a local officer "assigned to a multi-jurisdictional task force directed by" a federal authority "is considered a federal employee" for purposes of the Federal Tort Claims Act); *see also Lawson v. McNamara*, 438 F. App'x 113, 115 n.1 (3d Cir. 2011) (per curiam) (recognizing that "a private cause of action to recover damages against federal actors for constitutional violations" as a *Bivens* claim, not a § 1983 claim).

To establish a claim under *Bivens*, a plaintiff must show that he was "deprived of rights secured by the Constitution or laws of the United States" and that "the defendants who allegedly

deprived [him] of those rights acted under color of federal law." *Marie v. Am. Red Cross*, 771 F.3d 344, 364 (6th Cir. 2014) (emphasis omitted). The government contends that *Bivens* does not extend to Cain's claims against Rinehart, and Cain argues that we should not address this argument because the government did not raise it in the district court. However, "[a] cause of action's availability under *Bivens* is an 'antecedent' question that we can address even if it was not raised below." *Elhady v. Unidentified CBP Agents*, 18 F.4th 880, 884 (6th Cir. 2021) (quoting *Hernandez v. Mesa*, 582 U.S. 548, 553 (2017)). And we will do so here.

The Supreme Court has explicitly recognized only three contexts in which a private right of action for damages may be properly brought against federal officials for constitutional violations: "a claim against FBI agents for handcuffing a man in his own home without a warrant; a claim against a Congressman for firing his female secretary; and a claim against prison officials for failure to treat an inmate's asthma." *Ziglar v. Abbasi*, 582 U.S. 120, 140 (2017); *see Bivens*, 403 U.S. at 397; *Davis v. Passman*, 442 U.S. 228, 245–47(1979); *Carlson v. Green*, 446 U.S. 14, 19 (1980).

Expanding the reach of *Bivens* "is now a 'disfavored' judicial activity." *Ziglar*, 582 U.S. at 135 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)); *see Egbert v. Boule*, 142 S. Ct. 1793, 1803 (2022). Thus, in determining whether *Bivens* can afford relief in a particular case, a court must first ask "whether the case presents 'a new *Bivens* context'—*i.e.*, is it 'meaningful[ly]' different from the three cases in which the Court has implied a damages action." *Egbert*, 142 S. Ct. at 1803 (alteration in original) (quoting *Ziglar*, 582 U.S. at 139–40). If so, the context is new, and a *Bivens* remedy is "unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* (quoting *Ziglar*, 582 U.S. at 136). "If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Id.* (quoting *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020)). Applying these principles, we find that Cain did not have a cause of action against Rinehart under *Bivens*.

Cain's Fourth Amendment claim of unlawful entry arose in a new context. Although *Bivens* also involved an entry by law enforcement into a private residence, this case is meaningfully different because, unlike in *Bivens*, Rinehart and his team were attempting to execute an arrest warrant of a third party who they believed resided at the Glastonbury address. *See Ziglar*, 582 U.S. at 139–40 ("A case might differ in a meaningful way because of . . . the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted [or] the statutory or other legal mandate under which the officer was operating . . . ."); *Annappareddy v. Pascale*, 996 F.3d 120, 135 (4th Cir. 2021) (explaining that claims challenging warrantless searches are meaningfully different from claims concerning searches and seizures conducted pursuant to a warrant because they "implicate[] distinct Fourth Amendment guarantee[s]" and are "governed by different legal standards").

Although the task force members did not have a search warrant for the Glastonbury address, the arrest warrant for Mathis, who they believed resided there, gave them limited authority to enter the home. *See Payton v. New York*, 445 U.S. 573, 603 (1980) ("[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within."); *cf. Steagald v. United States*, 451 U.S. 204, 213–15 (1981) (holding that an arrest warrant alone does not authorize officers to enter the home of a third party and that, absent exigent circumstances or the resident's consent, officers must obtain a search warrant before entering the third party's home). Indeed, courts in several recent cases have found that the existence of a warrant creates a new context for *Bivens* purposes. *See, e.g.*, *McNeil v. Duda*, No. 3:22-cv-50096, 2023 WL 2587884, at *2 (N.D. Ill. Mar. 21, 2023) (finding that an unreasonable search claim arose in a new context because federal agents entered the plaintiff's home "pursuant to a valid arrest warrant" for a third party); *Lewis v. Westfield*, No. 16-CV-1057, 2022 WL 16924177, at *3 (E.D.N.Y. Nov. 14, 2022) (finding that the plaintiffs' claims arose in a new context because the defendants were executing an arrest warrant and therefore were "act[ing] under a different 'legal mandate' than the defendants in *Bivens*" (quoting *Ziglar*, 582 U.S. at 140)); *Cienciva v. Brozowski*,

No. 3:20-CV-2045, 2022 WL 2791752, at *9 (M.D. Pa. July 15, 2022) (holding that "the presence of a warrant is a crucial difference in the *Bivens* new-context analysis because the legal mandate under which defendants were operating diverges from the warrantless narcotics-investigation circumstances in *Bivens*" and collecting cases).

Another meaningful distinction between this case and *Bivens* is the federal agency involved. This case involved the U.S. Marshals Service, while *Bivens* concerned the actions of agents of the Federal Bureau of Narcotics. Thus, allowing Cain's claim would extend *Bivens* to "a new category of defendants," which *Egbert* identified as a new context. 142 S. Ct. at 1803 (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001)); *see Logsdon v. U.S. Marshal Serv.*, No. 21-253-KHV, 2023 WL 205052, at *3 (E.D. Okla. Jan. 13, 2023) (finding that "Deputy U.S. Marshals" were a new category of defendants that took case outside the *Bivens* context); *Lewis*, 2022 WL 16924177, at *3 (finding that claims arose in a new context because "[t]he defendants [we]re Deputy Marshals, rather than federal narcotics agents"); *Senatus v. Lopez*, No. 20-cv-60818, 2022 WL 16964153, at *5 (S.D. Fla. Oct. 12, 2022) (declining to extend *Bivens* to "members of a fugitive task force deputized by the United States Marshals"). Although Cain's Fourth Amendment claim bears similarities to the unreasonable search claim raised in *Bivens*, "even a modest extension is still an extension." *Ziglar*, 582 U.S. at 147.

Because Cain's claim arose in a new context, "[a]nother consideration is whether 'special factors counsel[] hesitation' in recognizing the new claim." *Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520, 524 (6th Cir. 2020) (second alteration in original) (quoting *Ziglar*, 582 U.S. at 139). They do. As the government points out in its brief, allowing claims for damages against members of federal fugitive-apprehension task forces could impair the government's recruitment of officers to participate in those task forces and could negatively affect task members' performance of their duties. *See Egbert*, 142 S. Ct. at 1807; *see also Cienciva*, 2022 WL 2791752, at *11 ("Implying a damages remedy for excessive force in Cienciva's case is potentially harmful to the duty of the Marshals Service to make judgment calls about the use of force needed to execute a judicially authorized arrest warrant."). Further, despite the enactment of legislation governing these fugitive-

apprehension task forces, *see* 34 U.S.C. §§ 20989, 41503(a), and its broad oversight power over the U.S. Marshals Service, *see Watkins v. United States*, 354 U.S. 178, 187 (1957), Congress has not created a private right of action for damages for constitutional violations committed by these task forces.  As the government contends, this congressional silence counsels against finding a *Bivens* remedy in a new context.  *See Ziglar*, 582 U.S. at 143–44.

Finally, there are alternative processes and remedies in place to deter unconstitutional acts of U.S. Marshals that preclude a *Bivens* claim in this context.  In *Egbert*, the Supreme Court explained, "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy."  142 S. Ct. at 1807.  By statute and regulations, the U.S. Marshals Service is obligated to supervise its employees and investigate grievances filed against its deputies.  *See* 28 U.S.C. § 561(g); 28 C.F.R. §§ 0.5(a), 0.111(n).  Additionally, Inspectors General are authorized to investigate and report abuses by federal law enforcement officers, including employees and officials of the U.S. Marshals Service, which may serve to deter misconduct.  *See* 5a U.S.C. § 3.  Although such alternative remedies do not allow an outside individual to participate or seek judicial review of the agency determination, *Egbert* held that similar provisions applicable to the U.S. Border Patrol precluded a *Bivens* remedy.  *Egbert*, 142 S. Ct. at 1806; *see also Lewis*, 2022 WL 16924177, at *4.  Further, the Attorney General is authorized under 31 U.S.C. § 3724 to settle certain claims for personal injury, death, or property damage caused by a law enforcement officer employed by the Department of Justice acting within the scope of employment, and at least one circuit court of appeals has found that this alternative remedy precluded expansion of *Bivens* to a new context.  *See Davis v. Dotson*, No. 20-13123, 2021 WL 5353099, at *2 (11th Cir. Nov. 17, 2021) (per curiam).

Case: 22-1893   Document: 9-2   Filed: 07/25/2023   Page: 9
Appellate Case: 23-7008   Document: 010110902707   Date Filed: 08/14/2023   Page: 11

No. 22-1893
- 9 -

Consideration of all these factors and the principles set forth in *Ziglar* counsels against extending *Bivens* to Cain's Fourth Amendment claim against Rinehart. We therefore **AFFIRM** the district court's judgment.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk