No. 23-7008

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

---

Donald Ray Logsdon, Jr.,

*Plaintiff–Appellant*,

v.

United States Marshal Service, et al.,

*Defendants–Appellees*,

---

On Appeal from the United States District Court
for the Eastern District of Oklahoma (Muskogee)
No. 6:21-CV-00253-KHV-TJJ
Hon. Kathryn H. Vratil, District Judge

---

## BRIEF OF *AMICI CURIAE* ACLU, ACLU OF OKLAHOMA, ACLU OF COLORADO, ACLU OF KANSAS, ACLU OF NEW MEXICO, ACLU OF UTAH & ACLU OF WYOMING IN SUPPORT OF PETITONER

---

Megan Lambert
ACLU of Oklahoma
P.O. Box 13327
Oklahoma City, OK 73113
(405) 286-1104
mlambert@acluok.org

Brett Max Kaufman
Elizabeth Gyori
ACLU Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
bkaufman@aclu.org
egyori@aclu.org

Tim Macdonald
ACLU of Colorado
303 E. 17th Ave., Suite 350
Denver, CO 80203
(720) 402-3151
tmacdonald@aclu-co.org

Sharon Brett
ACLU of Kansas
10561 Barkley Street, Suite 500
Overland Park, KS 66212
(785) 303-3641
sbrett@aclukansas.org

Stephanie Amiotte
ACLU of Wyoming
P.O. Box 1023
Jackson, WY 83001
(307) 637-4565
samiotte@aclu.org

Cecillia D. Wang
ACLU Foundation
39 Drumm Street
San Francisco, CA 94111
(415) 343-0775
cwang@aclu.org

María Martínez Sánchez
ACLU of New Mexico
P.O. Box 566
Albuquerque, NM 87103
(505) 266-5915
msanchez@aclu-nm.org

John Mejia
ACLU of Utah Foundation, Inc.
311 South State Street, Ste. 310
Salt Lake City, UT 84111
(801) 521-9862
jmejia@acluutah.org

## CORPORATE DISCLOSURE STATEMENT

Amici curiae are non-profit entities that do not have parent corporations, and no publicly held corporation owns ten percent or more of any stake or stock in amici. *See* Fed. R. App. P. 26.1.

Dated: May 12, 2023

Respectfully submitted,

/s/ *Brett Max Kaufman*
Brett Max Kaufman

*Counsel for Amici Curiae*

# TABLE OF CONTENTS

Page(s)

CORPORATE DISCLOSURE STATEMENT ......................................................... i

TABLE OF AUTHORITIES .................................................................................. iii

STATEMENT OF AMICI CURIAE ....................................................................... vi

SUMMARY OF ARGUMENT ................................................................................1

ARGUMENT ...........................................................................................................3

   I.   The district court's rejection of Mr. Logsdon's *Bivens* claim defies Supreme Court precedent and conflicts with the law of other circuits...........................3

      A.  Mr. Logsdon's claim is not meaningfully different from the claim in *Bivens*. ...............................................................................4

      B.  The district court's conclusion that special factors counsel hesitation against recognizing a constitutional claim in this case conflicts with Supreme Court precedent. ................................................14

   II.  If this Court endorses the district court's *Bivens* analysis, it will undermine fundamental Fourth Amendment rights against the grossest violations by federal officers. ...............................................................................19

CONCLUSION ......................................................................................................22

CERTIFICATE OF COMPLIANCE .....................................................................23

CERTIFICATE OF SERVICE ..............................................................................24

## TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Alvarado-Escobedo v. U.S.*,
817 F. App'x 536 (10th Cir. 2020)......................................................21

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
403 U.S. 388 (1971) ............................................................ 1, 4, 5, 9

*Bray v. Planned Parenthood Columbia-Willamette Inc.*,
746 F.3d 229 (6th Cir. 2014)............................................................21

*Brunoehler v. Tarwater*,
743 F. App'x 740 (9th Cir. 2018)......................................................11

*Bueno Diaz v. Mercurio*,
442 F. Supp. 3d 701 (S.D.N.Y. 2020)................................................12

*Carlson v. Green*,
446 U.S. 14 (1980) ............................................................................4

*Carpenter v. United States*,
138 S. Ct. 2206 (2018) ......................................................................7

*Davis v. Beers*,
421 F. App'x 179 (3d Cir. 2011)......................................................21

*Davis v. Passman*,
442 U.S. 228 (1979) ..........................................................................4

*Egbert v. Boule*,
142 S. Ct. 457 (2021) (mem.)............................................................4

*Garcia v. US Marshal*,
20CV3049, 2020 WL 3542519 (D. Neb. June 30, 2020) ....................21

*Graham v. Connor*,
490 U.S. 386 (1989) ......................................................................6, 7

*Greenpoint Tactical Income Fund LLC v. Pettigrew*,
  38 F.4th 555 (7th Cir. 2022).................................................................13

*Hicks v. Ferreyra*,
  64 F.4th 156 (4th Cir. 2023)................................................................12

*Hui v. Castaneda*,
  559 U.S. 799 (2010) ..........................................................................16

*Jacobs v. Alam*,
  915 F.3d 1028 (6th Cir. 2019)............................................................12

*Lehal v. Cent. Falls Det. Facility Corp.*,
  No. 13CV3923, 2019 WL 1447261 (S.D.N.Y. Mar. 15, 2019).........12

*McLeod v. Mickle*,
  765 F. App'x 582 (2d Cir. 2019).........................................................12

*Mejia v. Miller*,
  53 F.4th 501 (9th Cir. 2022)..............................................................1, 8

*Mejia v. Miller*,
  61 F.4th 663 (9th Cir. 2023) ........................................................ 1, 8, 11

*Ramirez v. Reddish*,
  218CV00176, 2020 WL 1955366 (D. Utah Apr. 23, 2020) ...............21

*Serrano v. United States*,
  766 F. App'x 561 (10th Cir. 2019)......................................... 13, 14, 21

*Silva v. United States*,
  45 F.4th 1134 (10th Cir. 2022).................................................... 14, 19

*Tennessee v. Garner*,
  471 U.S. 1 (1985) ...............................................................................6

*Ting v. U.S.*,
  927 F.2d 1504 (9th Cir. 1991)............................................................21

*Young v. City of Council Bluffs*,
  569 F. Supp. 3d 885 (S.D. Iowa 2021)................................................9

*Ziglar v. Abbasi*,
  137 S. Ct. 1843 (2017) ...................................................... 3, 4, 5, 6, 8, 9

## **Statutes**

31 U.S.C. § 3724 ...................................................................................18

## **Other Authorities**

Br. for Pet'r at 35, *Egbert v. Boule*, 142 S. Ct. 1793 (2022) (No. 21-147), 2021 WL
  6118300 (Dec. 20, 2021) ..................................................................10

## **Regulations**

28 C.F.R. §  0.29c ...............................................................................19

28 C.F.R. § 0.111(n) ...........................................................................19

## STATEMENT OF AMICI CURIAE[1]

The American Civil Liberties Union Foundation ("ACLU") is a nationwide, nonprofit, nonpartisan organization with more than two million members and supporters dedicated to the principles of liberty and equality embodied in the Constitution and the Nation's civil rights laws. The ACLU of Oklahoma, the ACLU of Colorado, the ACLU of Kansas, the ACLU of New Mexico, the ACLU of Utah, and the ACLU of Wyoming are state affiliates of the ACLU. The ACLU and its affiliates appear frequently before this Court, both as counsel representing parties and as amicus curiae. The ACLU has litigated numerous cases involving *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), in this Court and other federal courts, including the Supreme Court of the United States.

---

[1] No person or entity, other than amici, their members, or their counsel, made a monetary contribution to the preparation or submission of this brief or authored this brief in whole or in part. *See* Fed. R. App. P. 29(a)(4)(E). Amici submit this brief with the consent of both parties. *See* Fed. R. App. P. 29(a)(2).

## SUMMARY OF ARGUMENT

Plaintiff Donald Ray Logsdon, Jr., proceeding *pro se*, sued three United States Marshals Service ("USMS") officers for damages under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). His claim presents a particularly brutal use of excessive force by law enforcement: As Mr. Logsdon alleges, in the course of making his arrest (which he did not resist), the defendant officers knocked him unconscious and proceeded to take turns stomping on him for two full minutes. The district court initially concluded, correctly, that Mr. Logsdon's complaint alleged facts that were not "meaningfully different than the circumstances in *Bivens*." App. 106. As the court recognized, both cases involved "rank-and-file federal law enforcement officers making arrests," centered on allegations of excessive force with clear and longstanding constitutional standards articulated by the Supreme Court and this Court, and did not implicate factors like border or national security that have doomed recent *Bivens* cases before the Supreme Court. *Id.*

Nevertheless, the district court granted the defendants' motion for reconsideration based on an intervening out-of-circuit decision. *See* App. 150 (discussing *Mejia v. Miller*, 53 F.4th 501 (9th Cir. 2022), *amended upon rehearing by* 61 F.4th 663 (9th Cir. 2023)). On reconsideration, the court concluded that Mr. Logsdon's claim presented a new *Bivens* context because the defendants are U.S.

Marshals Service ("USMS") officers (rather than federal narcotics officers, like in *Bivens*), the officers were acting pursuant to a valid warrant (unlike in *Bivens*, which involved a warrantless arrest), and the events giving rise to the claim took place not at the plaintiff's home but at his friend's home (again unlike in *Bivens*). *See id.* These are the very same distinctions the court had already addressed months earlier in its initial opinion and rejected as not meaningful. *See* App. 107–08.

The district court was right the first time around. Its reversal on reconsideration is incompatible with the Supreme Court's *Bivens* opinion itself, which authorizes a damages remedy for a Fourth Amendment violation by a federal law enforcement officer in circumstances nearly indistinguishable from those in this case. The district court's reconsideration decision also conflicts with subsequent Supreme Court decisions, federal circuit court cases, and Congress's own endorsement of the scope of *Bivens* liability. If left standing, it threatens to effectively eliminate Fourth Amendment *Bivens* liability and immunize federal officers engaging in the use of excessive force throughout this Circuit, despite clear guidance from the Supreme Court that such liability is authorized by the Constitution and crucial to deterring officer misconduct.

The district court's decision on reconsideration carries with it dire consequences for regularly recurring, run-of-the-mill Fourth Amendment claims against federal officers—such as the egregious excessive force case here—that have

been authorized by the *Bivens* decision for more than half a century. Respectfully, this Court should reverse.

## ARGUMENT

### I. The district court's rejection of Mr. Logsdon's *Bivens* claim defies Supreme Court precedent and conflicts with the law of other circuits.

As the district court properly recited, courts are required to apply a two-step test in *Bivens* cases, asking (1) whether the case presents a new context, i.e., whether it is "meaningfully different from the three cases in which the Court has implied a damages action"; and, if so, (2) whether there are "special factors" counseling hesitation before "allowing a damages action to proceed," including whether Congress has provided alternative statutory remedies. *Egbert v. Boule*, 142 S. Ct. 1793, 1803 (2022) (cleaned up); *see Ziglar v. Abbasi*, 137 S. Ct. 1843, 1860 (2017) (listing factors suggesting that a *Bivens* claim lies in a new context); *see* App. 105–06; App. 148–49. But on reconsideration, relying on a recent, out-of-circuit case, the district court misapplied this two-step test, and its ultimate decision defies *Bivens* itself and more recent Supreme Court precedents. Faced with a case that is in every meaningful way on par with the original *Bivens* decision—a conclusion the same district court had already reached months earlier, App. 106—the court erroneously upended the expectations of the public and Fourth Amendment actors and supplanted the Supreme Court's judgment about the continued scope of Fourth Amendment *Bivens* claims.

### A.    Mr. Logsdon's claim is not meaningfully different from the claim in *Bivens*.

The Supreme Court has repeatedly reaffirmed that *Bivens* remains the law in the classic contexts of implied constitutional damages liability. *See Bivens*, 403 U.S. 388 (Fourth Amendment claim against federal law enforcement officers for excessive force); *Davis v. Passman*, 442 U.S. 228 (1979) (staff member's Fifth Amendment due process sex discrimation claim against congressman); *Carlson v. Green*, 446 U.S. 14 (1980) (prisoner's Eighth Amendment medical indifference claim against prison officials). Indeed, every time the Court has rejected *Bivens* claims because they presented new contexts, it has explicitly declined to abolish *Bivens* liability altogether. *See, e.g.*, *Egbert v. Boule*, 142 S. Ct. 457, 457 (2021) (mem.) (denying certiorari on that question). In so doing, the Court has continued to affirm that classic *Bivens* claims like Mr. Logsdon's remain available.

On reconsideration, the district court concluded that "plaintiff's allegations are materially different from *Bivens* in several important aspects," namely that (1) the arrest in question took place outside a friend's home, rather than in plaintiff's home; (2) the officers made an arrest pursuant to a lawful warrant; and (3) the officers were employed by the USMS. App. 150–51. But as the district court originally concluded, none of these distictions are "meaningful." *Abbasi*, 137 S. Ct. at 1859.

Mr. Logsdon's excessive force claim is not "different in a meaningful way from previous *Bivens* cases decided by" the Supreme Court—namely, *Bivens* itself, which involved an excessive force claim against federal narcotics officers. *Id.*; *see Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020); *see also Egbert*, 142 S. Ct. at 1803. Both this case and *Bivens* involved claims that federal law enforcement officers used excessive force in making an arrest. *Compare* App. 147–48 ("Plaintiff filed suit pro se . . . alleging excessive force during his arrest."), *with Bivens*, 403 U.S. at 389 (plaintiff alleged that federal officers "employed" "unreasonable force . . . in making his arrest"); *see Hernandez*, 140 S. Ct. at 744 ("*Bivens* concerned an allegedly unconstitutional arrest and search.").

Thus, Mr. Logsdon's *pro se* complaint presents a claim squarely within the original *Bivens* "search-and-seizure" context. *Abbasi*, 137 S. Ct. at 1856. *Abbasi* reaffirmed the Court's understanding that liability for excessive force claims are a fixed expectation relied upon not only by the public, but by federal officers, too. *See id.* at 1856–57. It is settled, the Court explained, that in the context of such claims, the *Bivens* decision "vindicate[s] the Constitution by allowing some redress for injuries" and "provides instruction and guidance to federal law enforcement officers going forward." *Id.* "[I]n this common and recurrent sphere of law enforcement," the Court wrote, "[t]he settled law of *Bivens* . . . and the undoubted reliance upon it

as a fixed principle in the law[] are powerful reasons to retain it in that sphere." *Id.* at 1857.[2]

In initially rejecting the defendants' motion to dismiss, the district court accurately articulated that framework. Its original opinion emphasized that the Supreme Court and this Court have articulated clear Fourth Amendment reasonableness standards that govern the defendants' conduct in executing arrest warrants and in evaluating excessive force claims. *See* App. 106 (citing *Graham v. Connor*, 490 U.S. 386 (1989), *McCoy v. Meyers*, 887 F.3d 1034 (10th Cir. 2018), and *Casey v. City of Fed. Heights*, 509 F.3d 1278 (10th Cir. 2007)).

By contrast, the facts in *Abbasi*, *Hernandez*, and *Egbert* demonstrate what new *Bivens* contexts look like: they involved factors that courts are ill-suited to assess, like national security interests, border security, or activity affecting diplomatic relations with a foreign country. *See Abbasi*, 137 S. Ct. at 1860; *Hernandez*, 140 S. Ct. at 743–44; *Egbert*, 142 S. Ct. at 1804. None of these factors are present in this case involving allegations of federal officers using excessive force during an arrest in the exercise of ordinary police duties, which are cabined by settled Fourth Amendment standards courts are accustomed to applying every day.

---

[2] While the *Abbasi* Court referred to *Bivens*'s "search-and-seizure context," that includes claims of excessive force, like those in *Bivens*, which the Supreme Court has made clear are analyzed as Fourth Amendment seizures. *See Graham v. Connor*, 490 U.S. 386, 394–95 (1989); *Tennessee v. Garner*, 471 U.S. 1, 7–10 (1985); *see also* App. 106.

In particular, the district court was wrong to conclude that three factors in Mr. Logsdon's case created a new *Bivens* context.

First, in its reconsideration opinion, the court relied on the facts that Mr. Logsdon's claim arose "outside a friend's house, unlike the unreasonable officer intrusion and arrest inside plaintiff's home in *Bivens*," and that "unlike the warrantless arrest in *Bivens*, the officers here had an arrest warrant for plaintiff." App. 151. But these differences are not legally significant. Mr. Logsdon does not challenge the validity of the arrest warrant, but rather the defendants' egregious use of excessive force in executing it. His claim—based on the defendant officers' running up behind him, knocking him unconscious with a kick to the face, and them stomping him for two minutes—is a valid one *wherever* those events took place, and *regardless* of the fact that the USMS officers were executing an arrest warrant.

It is true that the location of a search or seizure (say, in a person's home) is relevant in determining whether they have a reasonable expectation of privacy triggering the Fourth Amendment's warrant requirement. *See, e.g.*, *Carpenter v. United States*, 138 S. Ct. 2206, 2217 (2018). But excessive force claims do not arise from the warrant clause; instead, they spring from the Fourth Amendment's proscription on unreasonable searches and seizures. *Graham*, 490 U.S. at 395. When the Supreme Court in *Abbasi* referred to the "settled law of *Bivens* in this common and recurrent sphere of law enforcement, and the undoubted reliance upon it as a

fixed principle in law," 137 S. Ct. at 1857, it was referring precisely to this well-known type of Fourth Amendment reasonableness framework. *See* App. 106–07 ("The constitutional right under the Fourth Amendment to be free from excessive force during an arrest and the legal mandate which governs the officers' conduct are the same in both cases. . . . A warrant for an arrest does not give officers carte blanche to employ unreasonable force or otherwise disregard the rights of an individual under the Fourth Amendment."). The Fourth Amendment's proscription of excessive force has long bound every federal law enforcement officer in their dealings with the public. As those officers surely know, even when federal law enforcement properly executes a valid warrant (and therefore does not violate the subject's reasonable expectation of privacy), using excessive force would still violate the Fourth Amendment.

Although the district court cited two cases to support its "reasonable expectation of privacy" analysis, to whatever extent those cases contain similar reasoning, they are wrong. *See* App. 151 (citing *Mejia v. Miller*, 53 F.4th 501 (9th Cir. 2022), *amended upon rehearing by* 61 F.4th 663 (9th Cir. 2023)), and *Cienciva v. Brozowski*, 3:20-CV-2045, 2022 WL 2791752 (M.D. Pa. July 15, 2022)). The court also cited *Young v. City of Council Bluffs*, 569 F. Supp. 3d 885 (S.D. Iowa 2021), to support the notion that arrests taking place outside one's home and effectuated pursuant to a valid arrest warrant create a new *Bivens* context. App. 151.

8

The critical distinguishing factor in *Young*, though, was not *where* the arrest took place or the fact that officers had a warrant, but rather that "the alleged wrongful conduct [wa]s different," namely that "federal agents arrested the wrong person pursuant to an arrest warrant" with the same name. *Young*, 569 F. Supp. 3d at 893–94.

Second, the district court relied on the fact that "the officers here were employed by the [USMS], not the Bureau of Narcotics (or its successor agency, the Drug Enforcement Administration) involved in *Bivens*." App. 151. But the court did not explain why this is a *meaningful* distinction—and it is not. In *Bivens*, the Supreme Court described the damages claim it was endorsing as concerning the "guarantees to citizens of the United States the absolute right to be free from unreasonable searches and seizures carried out by virtue of federal authority." 403 U.S. at 392; *see id.* at 391 (framing the claim as about violating "the Fourth Amendment's protection against unreasonable searches and seizures by federal agents"). Even if the narcotics agency in *Bivens* and the USMS operate in different administrative bailiwicks, the functions performed by the officers in *Bivens* and in this case were identical—they all held similar "rank[s]," *Abbasi*, 138 S. Ct. at 1860, and were making an arrest under standard police authority. *See* App. 106 ("Both cases involve rank-and-file federal law enforcement officers making arrests."). That distinguishes both cases from *Egbert*, *Hernandez*, and *Abbasi*, which involved

9

federal officers performing national-security, border-protection, and high-level policy functions. *See Egbert*, 142 S. Ct. at 1804–06; *Hernandez*, 140 S. Ct. at 739; *Abbasi*, 137 S. Ct. at 1864.[3]

Indeed, the Supreme Court has already rejected the argument that suit against different federal agency officers, on its own, gives rise to a new *Bivens* context. The defendant in *Egbert* argued that a *Bivens* remedy should not be available because the case involved a different agency (Customs and Border Protection) enforcing a different legal mandate (the immigration laws). *See* Br. for Pet'r at 35, *Egbert v. Boule*, 142 S. Ct. 1793 (2022) (No. 21-147), 2021 WL 6118300 (Dec. 20, 2021). The Court declined to adopt the defendant's argument, instead concluding only that *Bivens* was unavailable because of the border enforcement context. *See* 142 S. Ct. at 1804–06. Thus, the district court mis-applied *Egbert* by characterizing the case's holding to be that a "case with new category of defendants is [a] new *Bivens* context because it presents potential special factors." App. 151. *Egbert* actually stands for the opposite.

---

[3] The district court also cited to *Lewis v. Westfield*, 16CV1057, 2022 WL 16924177 (E.D.N.Y. Nov. 14, 2022), and *Senatus v. Lopez*, 20-CV-60818, 2022 WL 16964153 (S.D. Fla. Oct. 12, 2022), *report and recommendation adopted*, 20-60818-CIV, 2022 WL 16961323 (S.D. Fla. Nov. 16, 2022), to find a new *Bivens* context here because defendants are employed by the USMS, and not the Bureau of Narcotics or its successor agency. These flawed out-of-circuit district court decisions misread both *Egbert* as effectively overruling *Bivens* when the Supreme Court said exactly the opposite, as well as other lower-court caselaw properly applying *Egbert*.

The district court's opinion is also at odds with the law of at least four other circuits that have agreed that claims like Mr. Logsdon's are available as classic *Bivens* claims—including the Ninth Circuit, which issued the intervening decision that caused the district court to change course. For example, in *Brunoehler v. Tarwater*, 743 F. App'x 740 (9th Cir. 2018), a pre-*Egbert* case, the Ninth Circuit addressed two separate Fourth Amendment *Bivens* claims. First, the court held that the plaintiff's claim for an unlawful wiretap did present a new *Bivens* context: it relied on Federal Bureau of Investigation ("FBI") agents implementing their authority under "an extensive statutory scheme" (the Wiretap Act) that itself provided a damage remedy for any violations. *Id.* at 742. But second, the court held that the plaintiff's Fourth Amendment claim for unlawful search and arrest against FBI agents did *not* present a new context, because it arose "in virtually the same search-and-seizure context" as *Bivens* itself. *Id.* at 744. That analysis is illustrative.[4]

---

[4] The result in *Brunoehler* is hard to square with *Mejia*, 61 F.4th 663—the impetus for the district court's reversal upon reconsideration. But *Mejia* was wrongly decided. In *Mejia*, the Ninth Circuit, relying on *Egbert*, rejected a *Bivens* claim of excessive force during an arrest on federal lands against federal officers patrolling federal lands. *Id.* at 665. Despite the result, the distinctions between *Mejia* and *Bivens* are not meaningful, and do not remotely implicate the concerns of recent Supreme Court cases like national security, border security, or foreign relations. However, even if *Mejia* was correct to conclude that differences in the federal officers' mandate in that case (over national parks and federal lands) were meaningful for *Bivens* purposes, those differences are not at issue in *this* case—and the bare result in *Mejia* should not have led the district court to reconsider its original decision to the contrary. Br. of Pl.–Appellant at 37, ECF No. 10110855926 (May 5, 2023).

Similarly, in *Jacobs v. Alam*, 915 F.3d 1028 (6th Cir. 2019), the Sixth Circuit rejected the defendants' argument that the plaintiff's excessive-force claim under the Fourth Amendment arose in a new context simply because it had some "factual differences" from *Bivens*. *Id.* at 1038 (claim was a "run-of-the-mill challenge to standard law enforcement operations that fall well within *Bivens* itself" (cleaned up)). Finally, "it has long been the practice of courts in [the Second] Circuit to permit *Bivens* claims [under the Fourth Amendment] arising from the use of excessive force in an arrest." *Lehal v. Cent. Falls Det. Facility Corp.*, No. 13CV3923, 2019 WL 1447261, at *12 (S.D.N.Y. Mar. 15, 2019) (citing district court cases in the Second Circuit); *see Bueno Diaz v. Mercurio*, 442 F. Supp. 3d 701, 709 (S.D.N.Y. 2020) (concluding the same in a post–*Abbasi* case); *see also McLeod v. Mickle*, 765 F. App'x 582, 583 (2d Cir. 2019) (allowing Fourth Amendment *Bivens* claim against Forest Service officer within Department of the Interior).

Even after *Egbert*, courts have allowed *Bivens* claims in the classic search-and-seizure context. In *Hicks v. Ferreyra*, 64 F.4th 156 (4th Cir. 2023), the court allowed a *Bivens* suit against two U.S. Park Police officers for unlawful traffic seizures in "rel[iance] on the Supreme Court's clear explanation in *Abbasi* that its severe narrowing of the *Bivens* remedy in other contexts does not undermine the vitality of *Bivens* in the warrantless-search-and-seizure context of routine criminal law enforcement." *Id*. at 166 (citing *Abbasi*, 137 S. Ct. at 1856). And in *Greenpoint*

12

*Tactical Income Fund LLC v. Pettigrew*, 38 F.4th 555 (7th Cir. 2022), the Seventh Circuit allowed a *Bivens* claim against an FBI agent for false statements made to procure a warrant, explaining that *Egbert* "does not change" *Bivens*'s "continued force in its domestic Fourth Amendment context." *Id.* at 564 & n.2.

The minor factual differences between *Bivens* and this case do not remotely rise to the level the Supreme Court has found to be meaningful in its recent *Bivens* decisions. In fact, *this* Court has at least strongly suggested that a *Bivens* claim like Mr. Logsdon's is viable. As the district court pointed out in its first opinion (and did not address in its second), this Court has previously assumed that *Bivens* "provide[s] a cause of action to an arrestee who alleged that while executing an arrest warrant, officers used excessive force." App. 108 n.2 (discussing *Serrano v. United States*, 766 F. App'x 561, 565–70 (10th Cir. 2019)). While this Court rejected the *Serrano* plaintiff's claims under qualified immunity, it cited previous cases for the seemingly unremarkable proposition that

> "a law enforcement official who fails to intervene to prevent another law enforcement official's use of excessive force may be liable under 42 U.S.C. § 1983," *Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996), and therefore under *Bivens*, *see Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (recognizing that *Bivens* is "the federal analog to a § 1983 suit").

*Serrano*, 766 F. App'x at 570 (cleaned up).

Similarly, this Court's recent decision in *Silva v. United States*, 45 F.4th 1134 (10th Cir. 2022), provides an illustrative contrast to Mr. Logsdon's. There, the Court

13

concluded that a *Bivens* claim arose in a new context where a prisoner alleged an excessive-force violation under the *Eighth* Amendment, rather than the Fourth. *See id.* at 1136–37. The prisoner, proceeding *pro se*, had argued that his case did not arise in a new context because the Supreme Court had already recognized a *Bivens* claim under the Eighth Amendment in *Carlson*. *Id.* at 1137. But the Court explained that "regardless of Plaintiffs' protestations to the contrary, his claim clearly constitutes an expansion of *Bivens*" because an Eighth Amendment "excessive force claim like the one plaintiff brings and a deliberate indifference to medical needs claim" like the one in *Carlson* were distinct. *Id.* But that kind of difference is not present here.

In requiring exacting sameness rather than looking for meaningful distinctions, the district court did what the Supreme Court declined to do in *Egbert*, *Hernandez*, and *Abbasi*: broadly foreclose a core Fourth Amendment claim as a new *Bivens* context, where there are no national or border security considerations.

**B.    The district court's conclusion that special factors counsel hesitation against recognizing a constitutional claim in this case conflicts with Supreme Court precedent.**

Because Mr. Logsdon's *pro se* damages claim does not present a new *Bivens* context, this Court's analysis should end there. *See* App. 108 ("Because plaintiff has alleged facts which support an excessive force claim that is not meaningfully different than *Bivens*, the Court need not assess whether special factors establish that

14

the Judiciary is less equipped than Congress to weigh the costs and benefits of allowing this damages action to proceed.").

Even so, the "special factors" analysis the district court adopted on reconsideration defies the Supreme Court's past cases. In *Egbert*, as in *Hernandez*, the Supreme Court held that special factors were present where a claim—even if brought under the Fourth Amendment—implicated national and border security considerations best addressed by the political branches. Following *Hernandez*, the *Egbert* Court concluded that in the border security context, courts were not "competent to authorize a damages action . . . against Border Patrol agents generally." 142 S. Ct. at 1806 (citing *Hernandez*, 140 S. Ct. at 746–47). Likewise, in *Abbasi*, the Supreme Court concluded that special factors barred a *Bivens* claim where the plaintiffs' claims "challenge[d] the confinement conditions imposed on illegal aliens pursuant to a high-level executive policy created in the wake of a major terrorist attack on American soil" because "[t]hose claims bear little resemblance to the three *Bivens* claims the Court has approved in the past." 137 S. Ct. at 1860.

None of this can be said here. Mr. Logsdon's claim does not implicate border or national security, and it does not raise a challenge to high-level government policy. And on reconsideration, the district court did not say otherwise. Nonetheless, it concluded that the availability of alternative remedies meant that a constitutional damages remedy for Mr. Logsdon would be inappropriate for two reasons.

First, the court reasoned that allowing Mr. Logsdon's claim would open the door to "claims against a new category of defendants such as Deputy U.S. Marshals." App. 152. But this merely repeats the court's previous error. Mr. Logsdon's claim is against the same kind of federal law enforcement officer as the one in *Bivens*, and merely because the name of the agency is different does not mean the officers' function and authority are meaningfully so.

Second, the court determined that Mr. Logsdon had "several alternative remedies including an administrative grievance, the [Federal Tort Claims Act ('FTCA')] or Section 3724 of Title 31." *Id.* The district court's FTCA conclusion is at odds with the Supreme Court's recognition that Congress has acceded to the Supreme Court's approach to the three traditional *Bivens* contexts. When, in 1988, Congress made the FTCA "the exclusive remedy for most claims against Government employees arising out of their official conduct," *Hui v. Castaneda*, 559 U.S. 799, 806 (2010), Congress "left *Bivens* where it found it." *Hernandez*, 140 S. Ct. at 748 n.9. In other words, Congress considered the option that it was "better equipped [than the courts] to create a damages remedy" for constitutional violations in the classic *Bivens* vein, *Egbert*, 142 S. Ct. at 1803–04, and decided that it was not.

With respect to the administrative grievance, in *Egbert* and *Hernandez*, the Supreme Court relied on the fact that thorough administrative investigations *had actually taken place*. *See Egbert*, 142 S. Ct. at 1806 (year-long internal

investigation); *Hernandez*, 140 S. Ct. at 740–41, 745 (Department of Justice investigation into plaintiff's death concluded that no policy had been violated and DOJ declined to bring charges). By contrast, the court below pointed merely to a website apparently available to the public for making complaints about USMS personnel to the Office of the General Counsel for the USMS and the Department of Justice's Office of the Inspector General ("OIG"). The court did so without relying upon any record evidence that this process was or would have been available to Mr. Logsdon at the time of the alleged incident or any evidence that an administrative complaint would have actually led to (let alone compelled) the kind of intense administrative investigations that the Supreme Court found meaningful in *Egbert* and *Hernandez*.

Indeed, a review of the regulations governing the USMS and OIG administrative grievances highlighted by the district court suggests that they are not sufficient to provide "safeguards to prevent constitutional violations from recurring." *Egbert*, 142 S. Ct. at 1806 (cleaned up). The sole regulation mentioning the USMS administrative complaint process, 28 C.F.R. § 0.111(n), which is cited by the district court, suggests that it merely confers power to the Director of the USMS to investigate complaints. *See id*. ("The Director of the United States Marshals Service shall direct and supervise all activities of the U.S. Marshals Service including . . . [i]nvestigation of alleged improper conduct on the part of U.S.

17

Marshals Service personnel."). But the regulation does not impose a duty to thoroughly investigate misconduct to the degree that had occurred, and had been accepted by the Supreme Court, in both *Egbert* and *Hernandez*. Similarly, the OIG is empowered to investigate "criminal wrongdoing or serious administrative misconduct," 28 C.F.R. § 0.29c, neither of which sufficiently cover constitutional violations that may fall outside these categories.

Regarding 31 U.S.C. § 3724, any remedy is provided at the discretion of the U.S. Attorney General, *see id.* § 3724(a), unlike the statutorily-mandated investigation and appropriate follow-up action for misconduct in *Egbert*, 142 S. Ct. at 1806. Further, damages are capped at $50,000, in exchange for "complete satisfaction of the claim against the Government," *see* 31 U.S.C. §§ 3724(a), (b), which may undervalue the injuries of *Bivens* plaintiffs.

Finally, the court failed to recognize the impractical nature of all these alternative remedies for an incarcerated person. Acknowledging that the USMS grievance form is available only online and inaccessible in prison, the court nonetheless insisted that Mr. Logsdon "could . . . have requested such forms . . . . through the U.S. mail system," App. 153—without addressing how he was supposed to know the forms existed in the first place. Similarly, filing an FTCA suit from prison can be difficult "without a computer or a specific form," such as access to "Standard Form 95," which is "a convenient format for supplying the information

necessary to bring an FTCA claim" and likely very helpful for *pro se* plaintiffs without legal expertise. App. 154 (quoting "Documents and Forms," U.S. Department of Justice, https://www.justice.gov/civil/documents-and-forms-0 (last updated Mar. 31, 2023)).

Regardless of the form, there is "warrant to doubt" that Mr. Logsdon could have "secured adequate deterrence" through the alternative remedies identified by the court below. *Egbert*, 142 S. Ct. at 1807 (citing *Hernandez*, 140 S. Ct. at 744–45); *Cf. Silva*, 45 F.4th at 1141 (holding that the Bureau of Prisons' Administrative Remedy Program was an alternative remedial structure foreclosing the plaintiff's *Bivens* claim because "the Supreme Court has long since described the BOP Administrative Remedy Program as an adequate remedy" that sufficiently deters unconstitutional acts of individual officers (citing *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 74 (2001))).

## II.    If this Court endorses the district court's *Bivens* analysis, it will undermine fundamental Fourth Amendment rights against the grossest violations by federal officers.

Reversal is also warranted because the district court's categorical revisions of the Supreme Court's *Bivens* analysis will radically undermine the public's expectations and incentivize federal officers who are carrying out ordinary police duties to violate basic Fourth Amendment rights.

The plaintiff in this case was working on a generator outside of a friend's house when the defendant USMS officers sought to carry out an arrest pursuant to a warrant. App. 104. The defendants approached Mr. Logsdon from behind, "[w]ithout announcing their presence," while he was working on private property and kicked him in the face, knocking him unconscious. *Id.* The USMS officers did not stop there, and proceeded to kick Mr. Logsdon for approximately two minutes while he was unconscious, even though he "never attempted or even had an opportunity to resist." *Id*.

These USMS officers, like other federal police officers who have been sued under *Bivens*, were carrying out the most ordinary police duties—executing an arrest warrant. *See* Simone Weichselbaum et. al., *US Marshals Act Like Local Police, But With More Violence and Less Accountability*, USA Today (Feb. 11, 2021), https://www.usatoday.com/in-depth/news/investigations/2021/02/ 11/investigation-us-marshals-kill-more-people-but-face-less-scrutiny/43975 33001; *see*, *e.g.*, *Garcia v. US Marshal*, 20CV3049, 2020 WL 3542519, at *2–3 (D. Neb. June 30, 2020) (allowing *Bivens* claim for excessive force against ten U.S. Marshals to proceed); *Ramirez v. Reddish*, 218CV00176, 2020 WL 1955366, at *3 (D. Utah Apr. 23, 2020) (twenty-two Fourth Amendment *Bivens* claims against USMS officers seeking to execute an arrest warrant). Federal courts are perfectly capable of adjudicating such claims. *See*, *e.g.*, *Bray v. Planned Parenthood Columbia-Willamette Inc.*, 746 F.3d

20

229, 232, 236 (6th Cir. 2014) (affirming grant of defendant USMS' motion to dismiss plaintiff's Fourth Amendment claims of unreasonable search and seizure, which were "solely [based on] the actions of marshals carrying out a presumptively valid order of a federal judge"); *Ting v. U.S.*, 927 F.2d 1504, 1508, 1510–11 (9th Cir. 1991) (denying summary judgment in favor of defendant FBI agent in a *Bivens* claim for excessive force during the execution of an arrest warrant); *Serrano*, 766 Fed. Appx. at 565–70 (upholding grants of qualified immunity to individual officers of a USMS fugitive taskforce whom plaintiff sued for use of excessive force); *Alvarado-Escobedo v. U.S.*, 817 F. App'x 536, 544 (10th Cir. 2020) (upholding grant of qualified immunity to a Deputy U.S. Marshal in an excessive-force claim); *Davis v. Beers*, 421 F. App'x 179, 181 (3d Cir. 2011) (upholding summary judgment in favor of defendant FBI agents in a claim of excessive force during an arrest).

The district court's opinion effectively renders the Fourth Amendment proscription on excessive force a dead letter unless officers beat or kill a plaintiff inside their own home after having entered without a warrant—a result neither the framers of Fourth Amendment nor the Supreme Court in *Bivens* could hardly have intended.

## CONCLUSION

Amici urge the Court to reverse the order of the district court.


Dated: May 12, 2023

Megan Lambert
ACLU of Oklahoma
P.O. Box 13327
Oklahoma City, OK 73113
(405) 286-1104
mlambert@acluok.org

Tim Macdonald
ACLU of Colorado
303 E. 17th Ave., Suite 350
Denver, CO 80203
720-402-3151
tmacdonald@aclu-co.org

Sharon Brett
ACLU of Kansas
10561 Barkley Street, Suite 500
Overland Park, KS 66212
(785) 303-3641
sbrett@aclukansas.org

Stephanie Amiotte
ACLU of Wyoming
P.O. Box 1023
Jackson, WY 83001
(307) 637-4565
samiotte@aclu.org

Respectfully submitted,

/s/ *Brett Max Kaufman*
Brett Max Kaufman
Elizabeth Gyori
ACLU Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
bkaufman@aclu.org
egyori@aclu.org

Cecillia D. Wang
ACLU Foundation
39 Drumm Street
San Francisco, CA 94111
(415) 343-0775
cwang@aclu.org

María Martínez Sánchez
ACLU of New Mexico
P.O. Box 566
Albuquerque, NM 87103
(505) 266-5915
msanchez@aclu-nm.org

John Mejia
ACLU of Utah Foundation, Inc.
311 South State Street, Ste. 310
Salt Lake City, UT 84111
(801) 521-9862
jmejia@acluutah.org

**CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Charter in 14-point type.

I further certify that this brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and Fed. R. App. P. 32(a)(7)(B) because it contains 5,347 words, excluding the parts of the brief exempted under Rule 32(f), according to the count of Microsoft Word.

Dated: May 12, 2023                    /s/ *Brett Max Kaufman*
                                        Brett Max Kaufman

## CERTIFICATE OF SERVICE

I certify that on May 12, 2023, the foregoing amici curiae brief was filed electronically through the Court's CM/ECF system. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system.

Dated: May 12, 2023                    /s/ *Brett Max Kaufman*
                                       Brett Max Kaufman